## STATE OF MAINE vs. EBEN LEACH.

' *Misconduct in office'—what is.   Evidence.   Indictment—necessary allegations in.*

' Misconduct in his office,' as used in R. S. of 1857, c. 7, § 15* is not limited to such acts as the law requires or expressly authorizes a register of deeds to perform

Thus, where a register of deeds, over his official signature, knowingly, purposely, and designedly, but neither corruptly nor with intent to defraud, made and delivered to another a certificate that he had examined the title of an individual therein named to a particular lot of land, and found no incumbrance on the same whatever,—when the register then well knew that the registry contained the record of an incumbrance by an attachment, and that the certificate was false,—he was *held* to be guilty of ' misconduct in his office,' although it was no part of his official duty to make such examination, or issue such certificate.

In such case, the fact that the certificate filed by the officer in the registry of deeds, and the record thereof, mention the middle initial letter of the attaching creditor as ' W.' instead of ' M.,' as in the writ will not exonerate the register.

In the trial of an indictment charging the ' misconduct in his office' of a register of deeds, by knowingly issuing a false certificate of a certain person's title to a particular lot of land, evidence comprising substantially the history of the certificate, and of the uses made of it in obtaining a loan by the person to whom it was issued, is admissible on the part of the prosecution under a count charging the offense done with an intent to defraud.

So is the writ on which the alleged attachment was made, together with a certified copy of the judgment thereon, the execution, levy, and of the record of the levy.

So is the record of the attachment, although the middle initial letter of the attaching creditor therein is ' W.' instead of 'M.,' as in the writ.

An indictment charging a register of deeds with ' misconduct in his office,' by knowingly issuing a certificate, that he had examined a certain person's title to a particular lot of land, and that he found no incumbrance thereon, when, in fact, he knew there was an incumbrance by attachment, need not particularly set out the writ of attachment and the other succeeding matters of record.

An allegation in such indictment that when said certificate was made and delivered as aforesaid, there was a valid and existing attachment for an amount specified, on said real estate named in said certificate, by virtue of a writ against the owner named in the certificate, ' all of which then and there appeared by the records of said registry of deeds,' sufficiently sets out the fact that the attachment had been recorded in said registry.

*See opinion.

ON EXCEPTIONS to the ruling of *Goddard*, J., of the superior court for this county.

INDICTMENT founded upon R. S. of 1857, c. 7, § 18 (R. S., c. 7, § 12), consisting of five counts, respectively alleging substantially,

1. That the respondent, on April 2, 1868, at Portland, was and still is register of deeds for the county of Cumberland, duly elected and sworn, and had given his official bond approved by the county commissioners, with sufficient sureties in the penal sum of two thousand dollars, conditioned for the faithful discharge of his duties as such register; that the respondent then and there, knowingly, purposely, designedly, and unlawfully did make, issue, and deliver to some person unknown, his official certificate as such register, in the words and figures following, viz.:

'Portland, April 22, 1868.   This may certify, that I have examined the title of James W. Leavitt to lot situated on State street, Portland, and that I find no incumbrance on the same whatever.

Attest:                          EBEN LEACH, *Register*.'

That said certificate when thus made, issued, and delivered was false and untrue, and that said real estate, named in said certificate, was not free of all incumbrance, as therein stated, but that then and there, when the same was so made, issued, and delivered, there was a valid attachment thereon for the sum of fifteen thousand dollars, by virtue of a writ against said Leavitt, all of which Leach then and there well knew; that Leach, then and there, knowingly, purposely, designedly, and unlawfully made, issued, and delivered said certificate, in his official capacity as register of deeds, for said county, well knowing the same to be false and untrue; and that said Leach was then and there guilty of misconduct in his office of register of deeds for said county, and incapable of discharging its duties, against the peace, etc.

2. That the respondent, on April 22, 1868, at Portland, was and still is register of deeds for said county, and was then and there guilty of misconduct in his said office of register of deeds in this, that on said day and year, the said Leach, at said Portland, in his official capacity aforesaid, knowingly, designedly, unlawfully,

and with intent to defraud, made, issued, and delivered to some person unknown, a certain certificate in the words and figures following, to wit: [same as in first count].

That said certificate was then and there false and untrue, and the said real estate was then and there under a valid attachment on a writ against the said Leavitt for fifteen thousand dollars, and Leach then and there when he made, issued, and delivered said certificate, well knew it was false and untrue, and that said attachment existed on said real estate, against the peace, etc.

The third and fourth counts were similar to the second, without the allegation of the 'intent to defraud.'

The fifth count was like the first, with the exception that immediately following the certificate succeeded the allegations:

That said certificate, at said Portland, on the day and year last aforesaid, so made and delivered by said Leach as aforesaid, was false and untrue, and that the said Leach then and there knew the same was false and untrue in this, that when said certificate was so made and delivered, there was a valid and existing attachment for fifteen thousand dollars on said real estate, named in said certificate, by virtue of a writ against said Leavitt demanding that sum as damages, all of which then and there appeared by the records of said registry of deeds, etc.

It appeared in evidence on the part of the government, *inter alia*, that the respondent was duly elected and qualified as register of deeds in and for the county of Cumberland, and entered upon the discharge of his official duties on Jan. 1, 1868; that Leach detailed the circumstances of the giving of the certificate substantially as follows: that a few days before making it, while he was busy in the office of register, some person called and requested the respondent to look up the title to a piece of real estate on State street; that before he completed the search, the applicant called two or three times; that when he completed the search, respondent told the applicant that he had gone over the records and found no mortgage or conveyance, but had found an attachment, *Churchill* v. *Leavitt*, and pointed it out to the applicant, who replied that he knew all

about the attachment, which amounted to nothing; that the applicant said that the respondent might make out a memorandum of the result of his investigation; that the respondent asked the applicant if respondent should mention the attachment in the memorandum, and the applicant replied no, it was of no account, that the applicant only wanted it for his own private use, and upon the whole, that the respondent might make applicant a certificate without mentioning the attachment; that respondent replied he could not make the certificate without mentioning the attachment, whereupon the applicant said he did not want that put in, as it did not amount to anything; and that respondent was induced to give the certificate, because it was for the applicant's private use.

It also appeared that the respondent testified in the criminal prosecution of *State* v. *William Chase,* that at the time the respondent delivered the certificate, it was false, and that he knew it.

One Jerris, called by the government, was permitted to testify against the seasonable objection of the respondent: That in 1868, he was agent for selling real estate; that the certificate in question was presented to witness by one William Chase, who wanted to raise money on a mortgage, when witness told Chase that a certificate from the register of deeds would be required that there was no incumbrance on the property; that in consequence of the information contained in the certificate, witness loaned Chase $7,000 and took a mortgage on the property referred to in the certificate; that Chase was negotiating for James W. Leavitt, and witness for one Converse, who required a certificate from the register; that witness had no information that an attachment existed on that property when he negotiated the loan; and that the property was worth $10,000.

The government introduced against seasonable objection of the respondent,

A writ *James M. Churchill* v. *James W. Leavitt,* dated Jan. 25, 1868. On the writ was the officer's return of same date, of general attachment of Leavitt's real estate in the county of Cumberland; and a return of completion of service by summons.

There  was  also  a  return  duly  signed  by  the  attaching  officer, reciting in the usual form  that he had filed an attested copy of his return  of  the  attachment,  etc.,  in  the  registry  of  deeds,  Jan.  27, 1868.

The  paper  actually  filed  by  the  officer  in  the  registry  of  deeds, was as follows:

' CUMBERLAND,  ss.    January 25, A. D. 1868.

At three o'clock  and five  minutes in  the  afternoon,  by virtue of the within writ, I attached all the right, title, interest, estate, claim, and  demand  of  every  name  and  nature,  of  the  within-named  defendant in and to all and any real estate  in  said  county  of  Cumberland.                                          GEO.  W.  PARKER,  *Sheriff.*

' The foregoing is a true copy of my return on a writ in favor of James  *W.*  Churchill,  of  Portland,  in  the  county  of  Cumberland, against  James W. Leavitt, now commorant at Paris, in the county of Oxford and State of  Maine.

' Writ  dated  January  25,  A.  D.  1868,  and  returnable  to  the supreme  judicial  court,  to  be  holden  at  Portland,  in  and  for  the county  of  Cumberland,  on  the  second  Tuesday  of  April,  A.  D. 1868.

' Said writ is in a plea of the case.

' The value of defendant's property which I am thereby commanded to attach, in fifteen thousand dollars.

Attested:                              GEO.  W.  PARKER,  *Sheriff.*'

The foregoing paper bore the following filing upon its back:

' Attachment of real estate.

*James M. Churchill* v. *James W. Leavitt.*

Cumberland, ss.    Registry of Deeds.

Received Jan. 27, 1868, and entered in vol. 9.

Attest:            (Signed)            EBEN  LEACH,  *Register.*'

The  government  also introduced, against the seasonable objection of the respondent, a copy of the judgment recovered on the foregoing  writ,  in  Aug.  13,  1869;  of  the  execution  issued  on  the  judgment,  Aug.  26,  1869;  of  a  return  of  a  levy  of  the  execution  upon

the land mentioned in the certificate, dated Sept. 8, 1869; and of the record of said levy entered in the registry of deeds, Sept. 17, 1869.

The record of an attachment upon the book of the registry of deeds, upon a writ in favor of *James W. Churchill* v. *James W. Leavitt*, was offered by the government, and admitted against the respondent's objection.

The respondent made requests for instructions as follows:

1. That what the statute calls 'misconduct in office,' relates to some act which it is the person's official duty to perform. And as it is no part of the official duty of the register of deeds to examine the records and give certificates of title, the certificate given by the defendant in this case, even if given corruptly and fraudulently, did not constitute 'misconduct in office.'

2. That no act or omission of the register of deeds constitutes the offense of misconduct in office unless it is done corruptly, or with intent to defraud. And unless such intent is proved beyond a reasonable doubt, in this case the defendant is entitled to acquittal.

3. That if the defendant, when he gave the certificate in this case, knew it was untrue in that it stated there was no incumbrance on the record, at the same time supposed from the statement made to him by the person who obtained the certificate that the attachment recorded had in some way been discharged, and he made the certificate without any actual intent to defraud, and without any actual intent to aid said person to defraud, or knowledge that the certificate was to be used for any such purpose, then he is entitled to an acquittal.

4. That it is not enough for the government to show a valid attachment existing at the date of the certificate alleged to have been given by the respondent; but it must also show that the return required by law had been made to the registry of deeds, or that a record of such a return had been entered upon the proper book in the office.

5. That the return of the officer to the registry, put in evidence

in this case, does not conform to the requirements of the law, and is not sufficient to perfect the attachment in respect to the record of it in the registry of deeds.

6. That the record of the attachment put into the case is not a legal record of the attachment upon the writ put into the case.

7. Evidence of notice to Leach after the delivery of the certificate, of the existence of the mortgage or of the attachment, is not legal proof of an intent to defraud at the date of that delivery.

8. Evidence of notice to the respondent, after the delivery of the certificate, of the existence of the mortgage or of the attachment, is not legal proof of an intent to defraud at the date of that delivery, and is not to be considered by the jury in determining whether the respondent then had a fraudulent intent.

The presiding judge gave the seventh requested instruction, and refused to give the others, and charged the jury, *inter alia*, as follows:

' Respondent's counsel have desired certain instructions which I decline to give, except so far as they may be contained in what I am about to say:

' 1. If you find that the respondent made, signed, and delivered to any person the certificate in question, at his office, at the time of its date, knowing it to be false at the time in a material particular, the act may amount to misconduct in office; it is evidence which would authorize a verdict against the respondent on all the counts but the second.

' 2. That a valid and existing attachment for $15,000, on the property named in the certificate, is a material particular.

' 3. That if you find the papers and records introduced genuine (and I do not understand that there is any question on this point), I am of opinion that Mr. Leach was justified in testifying in *State* v. *Chase*, that the certificate was, in that particular, false.

' You will, therefore, judge whether or not upon the admitted facts and records in this case, the respondent is not liable to conviction on all of the counts in the indictment, except the second.

' I will, however, observe, because one of the requests of the re-

spondent raises that point, that if Leach really supposed from the statement made to him by the person who obtained the certificate, that the attachment recorded on his records had in some way been discharged at the time he made and delivered the certificate, then he should be acquitted.

'I am not aware that there is any evidence, however, to that effect, nor did I observe that any such statement is contained in the account of the transaction given by Leach under oath, or to Jerris.

' Mr. Small's statement of it is, the person said, " he did not care anything about that, or it was of no account." And afterwards, when Leach objected to giving him a certificate for that very reason, " he said he did not want to use it, he wanted it for his own satisfaction, as a matter of reference." You will judge whether Leach's refusal at first to give a certificate, and this reply of the person do or not prove the contrary of what is assumed by this request.

' I might stop here if the government had not in the second count alleged a positive intent to defraud.

' Upon this point I instruct you that to convict the respondent on this count, you must be satisfied beyond a doubt that such was his intent. Now, what are the uncontroverted facts on this point?

' If you find that Leach knew of the falsity of his certificate when he issued it, was his intent fraudulent?

' You will notice that on the very next day, April 23, 1868, Mr. Jerris having, as he says, advanced to Leavitt $7,000 of the money of Mr. Converse, of New Hampshire, whose agent he was, took a mortgage from Leavitt, of his lot and house on State street, and that Leach recorded that mortgage that next day in his office.

' Was this or not notice, and early notice to Leach, that the certificate had been used for the very purpose that he says he did not mean to have it used?

' Again, some months after, Mr. Jerris says he personally called Leavitt's attention to the fact of the incumbrance, etc.

' Finally, Sept. 16, 1869, Leach was called on to record the actual levy by virtue of that very incumbrance. Was or not notice here directly conveyed to Leach of the incumbrance, the mortgage of

the property for $7,000, immediately after his certificate, and finally, the levy upon the whole of that property by the attaching creditor.

'Does it appear that any suitable explanation has been made or attempted. None .at all appears until Chase's trial in January, 1870, four months after the levy.'

The respondent did not testify.

The verdict was, not guilty on the second count, and guilty on all the others.

Thereupon the respondent alleged exceptions.

The respondent also moved in arrest of judgment upon the alleged ground that no offense known to the law was set forth in the first, third, fourth and fifth counts in the indictment.

The presiding judge overruled the motion, and the respondent alleged exceptions.

*Davis & Drummond*, for the respondent.

*Thos. B. Reed*, attorney-general, for the State.

KENT, J. The indictment in this case is founded upon R. S., 1857, c. 7, § 15, and is against the respondent as register of deeds for Cumberland county, and was tried in the superior court and comes here on exceptions. That section provides that 'when on presentment of the grand jury, or information of the attorney-general to the supreme judicial court, any register of deeds, by default, confession, demurrer, or verdict, after due notice, is found guilty of misconduct in office, or incapable of discharging its duties, the court shall enter judgment for his removal from office.' Provision is then made for the issuing of a writ to the sheriff to take possession of the books and papers belonging to the office, and for the delivery by him of the same to the clerk of the courts.

This provision, giving power to the court to remove a civil officer is, so far as we are advised, the only one of that nature to be found in our statute book. The constitution (Art. 9, § 5), gives the power of removal to the governor with advice of council, of

every person holding any office, on the address of both branches of the legislature. And it also, in the same section, provides that ' every person holding any civil office, under this State, may be removed by impeachment for misdemeanor in office.' In the single case of register of deeds, a like power is given to the court, when, under an indictment or information against that officer, he is found guilty of ' misconduct in office.'

It is to be observed, in the first place, that this section is not one providing for the punishment of the individual offender by fine or imprisonment for an offense against its provisions. It is not in that sense a strictly penal statute. It is rather in the nature of an inquest of office, and the consequences of a conviction under it reach only to the possession of the office and its emoluments. It seems much like the substitution of the court, for the legislature when acting by impeachment or address, as provided in the section of the constitution before alluded to. These distinctions may be of some importance in giving a construction to the statute, and in determining the limits to be given to the language used.

The principal question in this case is, what did the legislature mean by the words ' misconduct in office ? '

The charge is, that the respondent, being register of deeds, on application to him, made and signed in his official capacity a certificate that he had examined the title of an individual named to a lot of land in Portland, within his county, and found no incumbrance on the same whatever; whereas, in fact, there was an incumbrance by an attachment to the amount of fifteen thousand dollars, which, as by law required, was entered in the registry and appeared on the records of the same; and the respondent well knew the fact when he gave the certificate, and well knew, at the time, that his certificate was false, and he knowingly, purposely, designedly, and unlawfully made and issued the certificate. In one count of the indictment he is charged with an ' intent to defraud.' But this intent is negatived by the jury. But with this intent eliminated, we have enough left to say, without hesitation, that the facts charged and in substance admitted, show ' misconduct ' in whatever light

they are viewed.   They show an act done, by one who may well be presumed to know the facts, having the custody and charge of the records, which was a false statement of the state of the title to a particular parcel of real estate, and well known by him to be false, and issued or delivered to another person, known or unknown, without qualification or restriction, which statement was not general, but particular in this, that it certified to an examination of the records touching this specific parcel of land.   Although there might be no actual corruption shown by way of bribe or pecuniary inducements, yet the making, issuing, and certifying such false statement, knowing it to be such and knowing that it was calculated to deceive and mislead honest men, who might rely upon it unhesitatingly in their transactions, was an unjustifiable act, whether done by a man in office or by one out of office, and is mildly characterized by the word 'misconduct' if we prefix no adjective denoting the moral quality of the act.

But the respondent places his defense primarily and chiefly upon the distinction he makes between the misconduct of the act viewed as the act of a private individual, and misconduct in office. His counsel stated the point clearly in his first requested instruction, as follows : 'That what the statute calls " misconduct in office" relates to some act which it is the person's official duty to perform. And as it is no part of the official duty of the register of deeds, to examine the records and give certificates of title, the certificate given by the defendant in this case, even if given corruptly and fraudulently, did not constitute misconduct in office.'   This request was refused, and the following instruction was given :

  ' I instruct you, that if you find that respondent made, signed, and delivered to any person the certificate in question, at his office, at the time of its date, knowing it to be false at the time in a material particular, the act may amount to misconduct in office ; it is evidence which would authorize a verdict against the respondent on all the counts, but the second.'   The second count alone charged that the certificate was given with intent to defraud.   On this count the jury found the accused not guilty.   On all the other counts they found him guilty.

Was this ruling erroneous? It was so clearly if the proposition contained in the request is the true construction of the statute. It is quite clear that the certificate in question is not one that the register was bound by law to give, and that it was not one which could be used as legal evidence of the fact in court. If therefore, the proof of misconduct in office, under this indictment, is to be strictly limited to evidence which relates to some act which it is the person's official duty to perform, the ruling was wrong.

We do not incline to the opinion that this statute intended to confer upon the court the unlimited power to remove an individual from office, upon proof of facts showing immoral or felonious conduct, entirely disconnected from his office, and not being, or purporting to be, in any sense an official act, or assuming to be such.

This apparently unlimited power to remove for private, as well as public or official acts done in or by color of office, is given to the governor and council on address by both branches of the legislature. But this does not cover the case before us. The act here complained of is one that purports to be an official act, and has relation to the records of which he is the legal custodian. It is a certificate of a fact, of what does or does not appear on those records, which it is his duty to record, and to certify, and to give attested copies of, which may be used as evidence. It is true that any private person may examine the records of deeds, and give a certificate as to the result of his search. If such private person should give to his employers a certificate which was entirely false, and known by him to be so, he could not be indicted under this statute. But he might be liable to indictment at common law, if any one was defrauded thereby, and be also liable to an action for damages. But the certificate in question derived its chief importance from the official signature as 'Register.'

It was calculated to mislead and deceive even the most cautious, and chiefly because it came with the color of office on its face.

On a careful examination of the statute in question, and of its objects and the wrongs and misdoings which the legislature had in view, we cannot come to the conclusion that it was the intention to

limit the misconduct in office, however flagrant, to acts which it can be shown were strictly such as the law required or directly authorized the officer to perform, and which had legal efficacy by reason of the official certificate. We think the legislature did not intend this to be a strictly penal statute, for the punishment by fine or imprisonment of the individual offender, but intended by this mode to reach every register of deeds who should use his office or his official name in a false or fraudulent manner, or give currency or credit to any official certificate or other paper, which might be used for the purpose of fraud or imposition to the damage of honest men. If a register should write out what purported to be a copy of a deed of a lot of land, none such being before in existence, and should certify thereon, falsely, that that deed was on the records of the county, naming the book and page, no one would question that such an act was 'misconduct in office.' But if he should certify under his official signature, that there was no deed on record from A. to B. of a particular lot, when there was one there, and he knew that it was there, it might be said that this would not be a certificate which he was bound to give and that it had no legal efficacy, yet who can doubt that such an act would be gross misconduct in office. The same may be said of records of attachment.

When an officer, acting in his official capacity, and under his official signature does an act which has relation and refers to matters belonging to his department, and under his particular charge, and he acts knowingly, designedly, falsely, and the act is one calculated to mislead, and one that in its nature may be used for purposes of fraud or imposition, it is misconduct in office, within the intent of this statute. And this although no actual corruption by bribery or otherwise is proved. The mischief is the same, if the wrong was the result of unpardonable weakness in listening and yielding to the solicitations or representations of a fraudulent schemer, as when it is the result of a direct bribe. The law did not intend to allow a man to remain as the custodian of the records of all the titles to land in the county, and to give official certifi-

cates and copies of a most vital character, who is shown to have been guilty of giving knowingly a false certificate, touching what those records contained or did not contain. And this would seem to be an almost necessary rule to protect the public, when we find that such remarkable proceedings on his part as are developed in this case, made so slight an impression upon him, and were considered of so trivial a character, that he cannot remember who the individual was who procured the certificate, although he had had several conversations with him and had been persuaded by him to give the certificate against his convictions and knowledge.

It is well known that in our country, generally, intermediate title deeds do not pass with the title, from grantor to grantee as in England, when the land-owner has possession of all the original deeds, often from a remote antiquity. Hence our rule, which allows a party to prove the successive links of his title, by copies of deeds, certified by the register of the county, in whose registry they are recorded. This would soon become a dangerous and impracticable rule, if the most unbounded confidence is not reposed in the integrity and correctness, and even scrupulous care of the register. Proof of one intentionally false certificate, by which an imperfect title was supplemented, would lead to such mistrust, that the whole rule would be abrogated, which is now so useful and satisfactory.

The law will not allow a person who, assuming to be and acting as an officer, exacts illegal fees or does other illegal acts as such officer, to defend on the ground that he was not in fact such officer, duly qualified. The law says to him, ' you assumed to act as an officer and you led another party to regard you as such and to pay you money in that capacity, and you shall not now be allowed to deny your official character.' May not the law with equal propriety say to an officer: ' You undertook to do an act and give a certificate in your official character, touching matters belonging to your office, calculated to mislead honest men, and you shall not shelter yourself from a charge of misconduct in your office by setting up the plea that it was not an act which the law required you to do.'

There is a manifest distinction between a case of misconduct, resulting in loss of office only, and the charge of a legal crime, which requires proof of criminal intent before conviction, and punishment of the person by fine or imprisonment after conviction. In the latter there must be a direct charge in the indictment of the criminal intent and criminal act. ' Misconduct ' does not necessarily imply corruption or criminal intention. We think the legislature used the word in its more extended and liberal sense. This statute is not, strictly speaking, a penal statute, but rather remedial and protective.

Our conclusion on this part of the case is that the first instruction given, as before stated, was correct, and the requested instructions on this point were properly withheld.

The defendant raises in argument several other points, more technical in their character, but which are properly presented and must be considered.

He objects to the admission of evidence, which may be briefly defined as the history of the certificate, and of the uses made of it, in obtaining a loan by the holder. We think this evidence was admissible on the trial of this indictment, and particularly under the second count, which charges an intent to defraud. The jury, it is true, negatived this charge, but the evidence was admitted to prove the truth of all the charges. It was competent for the government to show, under a charge of an intent to defraud, the fact that the instrument was used in fact for that purpose, and from that fact to argue that the purpose was known to the defendant, and that he must have corruptly intended to aid in the fraud. In all cases where the intent of an act becomes material, or where fraudulent or corrupt purposes are charged, great liberality is always exercised in admitting testimony bearing on the whole history of the transaction, and of the uses made of the alleged instrument by which the fraud may be consummated. Whilst the charge in the second count was in issue, it was competent for the government to prove a fraud committed, to strengthen, at least, the proof of the charge of a corrupt intent to defraud on the part of the respondent when he gave the certificate.

These remarks apply also to the objection to the introduction of the judgment and the levy. They are a part of the history, showing that the lien by attachment had been perfected by a levy, and thus the fraud had been successful, and are admissible on the same general principle. The judge instructed the jury that if they found the papers and records introduced genuine, the respondent was justified in saying, what Mr. Small testifies that he has stated under oath, that the certificate was, in that particular, 'false.' The respondent objects to this, and says that the documents, if genuine, were not sufficient to justify the charge. The first objection is that the return by the officer of the attachment does not correspond with the writ introduced, in this, that the name of the plaintiff in the writ was James *M.* Churchill, and in the return to the registry, James *W.* Churchill. This appears to be the fact. But the filing on the back of the return to the register is, 'Attachment of real estate, *James M. Churchill* v. *James W. Leavitt,*' made by the sheriff.

In determining whether this variation in the middle initial letter is so fatal as to exonerate legally the respondent, we must look at the nature of the charge, and of the offense. The charge is misconduct in giving a false certificate knowingly. The certificate given was general that there was no incumbrance, and not simply that there was no attachment on this particular writ. Now if he had, as he says he had, examined the records, he must have found, as he admits he did find, an attachment of the real estate of James W. Leavitt to a large amount. There was no mistake in the name of the debtor or defendant in that suit. If there had been, it would have presented a much graver question. The certificate was equally false, whether the attachment was by James *M.* or by James *W.* Churchill. There was a return of an attachment of the real estate of James W. Leavitt. There is no pretence that the respondent knew of any mistake. The filing, if he was curiously exact in his examination, gave the true name of the plaintiff. At all events, he knew that there did appear to be an attachment by some person, and it is not for him, under this charge of misconduct

only, to say that his certificate was not false, because there was a difference in the middle initial letter of the plaintiff's name. We do not intend to say that such a return as this, taking it as it stands on its inside and outside, did not perfect and keep alive the attachment against subsequent purchasers. The great object of the return to the registry is to give notice of the fact of an attachment of the debtor's property, to all examiners of the record, and to put parties in possession of such information as may enable them to ascertain the nature and extent of the claim sued. The name of the plaintiff is of comparatively small consequence in this regard. And the officer does certify in his return upon the writ, that he did file in the registry of deeds, ' a true and attested copy of his return, together with the names of the parties.' It has not been decided that this return is not conclusive, in a controversy concerning the title, in analogy to the rule in cases of returns of levies on executions. But, as before said, the question here is not as to the effect of such partial misnomer in a suit involving the title, but as bearing upon the question of misconduct on the part of the register.

If a register, knowing that a return of an attachment was in the books of his office, should certify officially that he had examined and found no incumbrance, he could hardly clear himself from the charge of misconduct by proving that the writ on which the attachment was made contained only a money count, without any specification. This, under our decisions might be fatal, on trial, to the attachment as against subsequent purchasers. But if the fact was made known to a lender he would be likely to refuse the loan on this security, whilst such a cloud hung over the title.

We can see no force in the objection as to the certificate and attestation, and it does not seem to be relied upon in argument.

It is unnecessary to discuss the rulings of the court touching the question of a fraudulent or corrupt intent, as the verdict negatives such intent. The court also instructed the jury in substance, that if the respondent really believed, at the time he gave the certificate, that the attachment had, in some way, been discharged, he

should be acquitted. This was a favorable view for the accused. We do not think that the judge was bound to give the fourth and fifth requested instructions in the form and extent required, but did not err in giving the ruling on this point, which he did give, for the reasons before stated.

Finally; the respondent moves in arrest of judgment, because, he says, that no offense known to the law is set forth in the first, third, fourth, and fifth counts of the indictment or any of them. He specifies his objections in the argument.

1. That the writ and attachment and all matters of record should be particularly set out in the indictment. If such precision and exemplification of records is required in some cases of felony or other crimes, where they become the foundation of the charge, we do not think that, in a case like this, such minute and extended copies of documents are required. The charge here is misconduct in office, by making a false certificate of the real state of the title. These papers, the writ, attachment, and return are matters of evidence to establish certain facts, which tend more or less to prove the charge in the indictment. As well might it be required to spread out in the indictment the mortgage deed given to the person who loaned the money, before evidence could be given of a corrupt intent. It is never necessary to set out what is mere matter of evidence. It is necessary in a charge of forgery or fraud, where the crime rests, as one may say, in the instrument itself. In this case the certificate is set forth *verbatim* in each count; and it is declared in substance that it was untrue and known to be so by respondent, and knowingly, designedly, and unlawfully made and delivered to another person. This is a sufficient setting out.

2. The counts then set out that it was false, in this, that these then and there, when it was so made, issued and delivered a valid attachment thereon for the sum of fifteen thousand dollars, by virtue of a writ against said James W. Leavitt, all which defendant well knew.

The objection here is that there might be a valid attachment, and the register of deeds might have known it, not recorded in his

registry; and that, as his certificate refers only to his examination of the records, and that he there finds no incumbrance, there might be an attachment nevertheless, which would be good against all persons for five days without record, and good as a lien against the defendant's property until thirty days after final judgment. It is claimed that it should appear distinctly in the indictment, that the attachment had been recorded in the registry, otherwise the certificate might be true in its terms. But it is unnecessary to discuss this point, because the fifth count does contain the distinct allegation that there was a valid and existing attachment on a writ described, ' all of which then and there appeared by the records of said registry of deeds.' If it did so appear it must have been duly filed and entered, otherwise it would be no part of the records, and could not be said to appear by the records.

It is not a pleasant duty, but nevertheless it seems to us a duty imperative upon us to say, on the whole case,

*Exceptions overruled.*

APPLETON, C. J.; WALTON, DICKERSON, BARROWS, and DAN-FORTH, JJ., concurred.

The following dissenting opinion was drawn by

TAPLEY, J. I do not concur in the opinion sustained by the majority. It seems to me that ' misconduct in office' means official misconduct. That for all misconduct of the individual which is not official, he must be held, as others are, amenable to the laws provided for the punishment of such offenses as he is found guilty of.

Such a certificate as was given in this case the defendant was not required by law to give. It had no legal significance as such, or legal force beyond that given by any individual. The appending to the certificate words showing he was register of deeds at the time, did not change the fact that it was the certificate of one not required by law to give such, and did not make it an official act.

Another view of the case, to my mind important and not controverted or denied in the opinion, has been presented in defense,

and that is, that there was in fact no valid attachment or incumbrance existing upon the premises.

I think it cannot well be said the legislature designed to punish, by removal from office, a person who shall state truly an existing fact. It seems to me such an act is not 'misconduct in office,' whether this phrase be limited to official misconduct, or be extended beyond it.