[No. 1206, February 26th, 1908.]

TERRITORY OF NEW MEXICO, Appellee, v. MANUEL SANCHES y SANCHES, Appellant.

SYLLABUS (BY THE COURT).

1.   Under the provisions of Sec. 844 of the Compiled Laws of 1897, a justice of the peace, constable or sheriff is removable from office for "official misdemeanors" committed by

him while holding the same office in a preceding term, at least if there has been no intervening term held by another.

2. The fact that an act by such an officer is punishable as a crime does not affect his liability to removal from office for the same act.

3. Whether by the terms of Sec. 854, of that statute, one accused and on trial under it is entitled to trial by jury, quaere, but, if it is accorded to him by the court, it should be conducted as in other similar judicial proceedings.

4. A proceeding under the statute in question is so far a civil cause in its nature, that the Trial Court has the right to direct a verdict against the defendant, if the evidence would warrant such a direction in a civil cause, and if the facts thus found, or any of them, constitute as a matter of law any one of the grounds for removal enumerated in the statute, to enter a judgment of removal.

Appeal from the District Court for Torrance County, before EDWARD A. MANN, Associate Justice. Affirmed.

GEORGE W. PRICHARD, for Appellant.

Under Compiled Laws, 1897, sec. 844, the court below did not have the power to remove a sheriff for acts done under a prior term of office. Thurston v. Clark, 107 Cal. 285, 288; State v. Watertown, 9 Wis. 254; Conant. v. Graden, 6 N. Y. St. Rep. 322; Speed v. Common Council, 98 Mich. 360; State v. Jersey City, 25 N. J. 536; Commonwealth v. Shover, 3 Wats. & S. 338; Wood v. Varnum, 95 Cal. 639, 24 Pac. 843; State ex rel Gill v. Common Council, 9 Wis. 255; 23 Am. & Eng. Enc. 445.

This was a criminal proceeding in all essentials and the appellant was entitled to trial by jury. Thurston v. Clark, 107 Cal. 289.

ALBERT B. FALL, Attorney General, and FRANK W. CLANCY, District Attorney, for Appellee.

A public officer can be removed from office for misconduct during his preceding term of the same office. Cases cited by appellant reviewed and distinguished. State v. Welsh, 109 Ia. 21; State v. Sheriff, 45 La. Ann. 1354, 1355; State v. Hill, 37 Neb. 89; State v. Bourgeois, 45 La.

Territory v. Sanches.

1350, 14 South. Rep. 28; Blackenridge v. State, 27 Tex. App. 513, 11 S. W. Rep. 631; State v. Hill, 37 Neb. 80, 55 N. W. Rep. 794.

An officer can be removed for official misconduct, although his offense can also be otherwise punished. Compiled Laws, 1897, sections 844, 1199, 1200, 1201, 1206, 1208; Laws of 1901, ch. 19.

Repeals by implication are not favored, and an act will not be held to repeal a former act unless the repugnancy between the two is plain and unavoidable. Lawson v. Gibson, 18 Neb. 137; State v. Babcock, 21 Neb. 599; Hopkins v. Scott, 38 Neb. 669.

A statutory proceeding for the removal of a corrupt or incompetent officer is not a criminal prosecution. Hopkins v. Scott, 38 Neb. 669; Compiled Laws, 1897, sec. 846, 854; 23 A. & E. Enc. of Law 428 et seq.; Mechem on Public Officers, secs. 457, 458.

### STATEMENT OF FACTS

This was a proceeding in the trial court under Sec. 844 of the Compiled Laws of 1897, for the removal of Manuel Sanches y Sanches from the office of sheriff of Torrance County. It was begun by a sworn complaint made by Fred Fornoff, a citizen of the Territory, to the District Court for Torrance County, and filed in the office of the clerk of that court January 19, 1907. It charges the defendant with habitual and wilful neglect of duty, of gross partiality, of oppression, of corruption, of extortion, and of wilful maladministration as sheriff and specifies eight "instances of such official misdemeanors". The defendant asked for a jury trial on the charges thus made, which was granted by the court and had at a term of said court held in Torrance County, in February, 1907. At the conclusion of the evidence, the court, on motion of the District Attorney, Clancy, directed the jury to return a verdict for the plaintiff, "as to the charges contained in paragraphs numbered one, four, six, seven and eight of the complaint, and for the defendant as to count three of the complaint." The second and fifth charges had been dismissed on motion of the plaintiff." As to some of the

acts charged in which the verdict was against the defendant, it appeared that, as alleged, they occurred before the beginning of the term of office in which the defendant was serving as sheriff at the time the complaint was made and the trial had but within the next preceding term of the same office which he held for that term. It also appeared that in specification numbered one the defendant was charged with doing that which was punishable as a criminal offense, if it was done. A judgment of removal from office was entered by the court, and the cause is here on appeal from that judgment.

### OPINION OF THE COURT.

ABBOTT, J.—Several questions of much interest and moment are before us for determination in this cause. As the case usually is with questions on which good lawyers could reasonably differ they have been decided in opposite ways by different courts of last resort, among the more than half a hundred courts of that class in this country, and we are much in the same position we should be in if there had been no decision whatever on them, since we are not constrained by the unquestioned authority of adjudged cases to adopt conclusions which might seem to us contrary to reason and justice.

It is essential to determine at the outset and to bear in mind throughout the true nature and purpose of the proceeding brought here for review. They could hardly be better expressed than in the words of Kent, J., in State v. Leach, 60 Me. 58, in which the state was represented by its attorney general, Hon. Thomas B. Reed: "The object of the removal of a public officer for official misconduct is not to punish the officer, but to improve the public service, and to free the public from an unfit officer." To the same effect is Rankin v. Jauman, 4 Idaho 53, 36 Pac. Rep. 502. With this clear statement which cannot be gainsaid, as a guide, we shall be prepared to deal with the first claim of error for the defendant, discussed in the brief in his behalf, namely, that the trial court erred in holding that the defendant could be removed from office for acts done by him while holding the same office in the

term immediately preceding the one in which his trial took place. The weight of authority, in numbers, is probably with the defendant on that point. · But is a public officer less unfit to hold his office, or are the people less injuriously affected by his holding it because the act demonstrating his unfitness was committed on the last day of one term of office rather than on the first day of the next succeeding term? There can be but one answer to that question. The reasoning of the court in State v. Welsh, 109 Iowa 21, seems to us so absolutely sound and conclusive that we quote from the opinion: "On motion, the particular averments of official misconduct and neglect of duty during the first term were stricken from the petition on the ground that removals are only allowable for acts during the term being served. The statute contains no such limitation. The very object of removal is to rid the community of a corrupt, incapable, or unworthy official. His acts during his previous term quite as effectually stamp him as such as those of that he may be serving. Reelection does not condone the offense. Misconduct may not have been discovered prior to the election, and, in any event, had not been established in the manner contemplated by the statute. The defendant was entitled to the office until his successor was elected and qualified. Being his own successor the identical officer continued through both terms. His disqualification to continue in the particular office results from the commission of some of the prohibited acts during his incumbency. . . This has been the uniform rule in impeachment trials, where, coupled with removal from office, is the penalty of disqualification to hold any office of honor, trust, or profit under the state. In New York, Judge Barnard was impeached during his second term for acts committed in that previous. The same was true of the impeachment of Judge Hubble, of Wisconsin, and Governor Butler, of Nebraska. . . For many purposes each term of office is separate and entire. This is especially true with respect to the obligation of sureties. But there is no reason for so holding as to the incumbent. Being his own successor, there is no interregnum. His qualification marks the only con-

nection between the terms. The commission of any of the prohibited acts the day before quite as particularly stamps him as an improper person to be intrusted with the performance of the duties of the particular office, as though done the day after. The fact of guilt with respect to that office warrants the conclusion that he may no longer with safety be trusted in discharging his duties."

It is also urged for the appellant that because one of the acts of which he was found guilty by the verdict is made a criminal offense by statute, he cannot be removed from office because of it. But we again apply the test that the procedure for removal is not penal in purpose, but remedial and protective. The fact, if it should appear to be one, that an act on which a charge of official misconduct was based was also a criminal offense should strengthen rather than weaken the case for removal. Am. & Eng. Enc., Vol. 23, 443, and cases cited in N. 4; Hopkins v. Scott, 38 Neb. 669.

We come, then to the manner in which the charges were dealt with by the court. It is alleged, for the defendant, that he was entitled to a jury trial, and that he did not have one. He was not entitled to jury trial as a constitutional right, 17 Enc. P. & Pr. 225; and cases cited, but perhaps had the right by the terms of the statute which provides that in such a proceeding "all accusations of facts shall be tried as in other actions." "Other actions" must mean other actions of like nature, and even in civil cases most nearly resembling those arising under that statute, a jury trial must be had unless it is waived. The Territorial legislature has besides in specific terms by statute, Sec. 2567, Comp. Laws, 1897, provided for the summary removal of certain public officers, and it may fairly be assumed that if it had intended by the statute in question to provide for removal, summary in its nature, it would have so declared. But it is not necessary to decide that question in this case. since the trial judge gave the defendant the benefit of the doubt on that point and granted him a jury trial. Having granted one, he was, we have no doubt, bound to see that it was a jury trial within the ordinary meaning of that expression. Had the trial judge

Territory v. Sanches.

then, the right to direct a verdict against the defendant on any charge, assuming for the moment, that there was sufficient evidence to sustain it on that charge and was substantially no evidence for the defendant to the contrary? That raises the question whether the proceeding is civil or criminal, or, if it is only *quasi*-criminal at most, whether it is in respect to the right of the court to direct a verdict, to be classed as a civil cause? Here we come definitely to the parting of the ways. On either we can have the company of able lawyers and eminent jurists. On the one, however, we shall find ourselves with those public officers who have shown themselves unworthy of the trust reposed in them but escaped removal because the courts followed rules which came into being centuries ago, when the individual needed protection against the despotic executive, who claimed to be the state, and are but poorly adapted to these times in which the state, now, the people collectively, is beset by predatory individuals and is often helpless against them, because it is hampered by such rules. By the other way we shall join lawyers and judges equally learned and upright, and, what is more important, the great body of citizens who are entitled to be served by competent and honest officers. There can be no question, then, of the choice we should make, if we are not constrained by precedent or principle to the opposite one. It has been held in California and Texas that such a proceeding is to be considered as a criminal cause. In New York, Maine, Tennessee and Idaho it is not so regarded, in its essential nature, at least. Kilburn v. Law, 111 Cal. 237; State v. Alcorn, 78 Tex. 387; State v. Leach, supra; Rankin v. Jannan, supra. 1 Mart. & Y. (Tenn.) 168. It has also been held that the accused has not a constitutional right to trial by jury in such a case; that the method of procedure provided by the statute under which action is taken must be strictly followed; Armijo v. County Commissioners of Bernalillo County, 3 N. M. 477; but that the strict rules of pleading and proof which obtain in criminal cases are not applicable. 17 Enc. Pl. & Pr. 219; Poe v. State, 72 Tex. 625; and that the *quantum* of evidence need be only that required for a verdict in a civil

cause. 23 Am. & Eng. Ency. 451; People v. Roosevelt, 6 N. Y. App. Div. 382. Now, on principle we do not perceive why a proceeding should be considered criminal which does not provide for the imposition of a fine or imprisonment for the one through it found to be unfit for office but leaves him still subject to either or both if the acts for which he is removed are so punishable, which does not even deprive him of property, since in this country a civil office is not property, but which merely by the judgment rendered prevents him from holding the office for which he has been found unfit for the remainder of his term, and does not disqualify him for re-election or re-appointment for another term. We hold, then that the trial judge had the right to direct a verdict as in a civil case, and proceed further to inquire whether the evidence justified the direction given. The statute specifies several grounds of removal, all but one of which are included in the sworn complaint made against the defendant. It was sufficient to sustain a judgment of removal if any one of those grounds was established. In each of the first seven specifications under the general charge a single act was alleged; in the eighth a general doing of acts of a certain kind was averred. The question for the jury was whether the defendant did what was charged in six of the eight specifications, two having been dismissed, or in any one of them. By direction of the court it was found that he did what was charged in five of them. Even if the evidence did not warrant such a direction as to more than one, but did warrant it as to that, the verdict should stand on that one. Poe v. State, supra. The defendant, who testified in his own behalf, did not deny that he acted as attorney for Luis Martinez, at the trial of a criminal charge against him before a justice of the peace, as charged by specification number eight, nor did he deny, in relation to specification number seven, that he was acting as attorney for Reyes Quintana and Manuel Quintana, at whose instance S. J. Humphries had been arrested by his deputy, at the trial of the cause before a justice of the peace, and he admitted that he heard them tell Humphries, without denial on his part, the case

Territory v. Sanches.

could be settled if he would pay the costs including twenty dollars for their lawyer, meaning the defendant, Sanches, which Humphries would not do, but, instead, waived examination, appealed and gave bond. He said, too, that twenty dollars was the amount of his charge to the Quintanas in the matter. We find in the record no evidence that he had not done those things and his own admission that he had. Indeed, he did not deny the essential facts charged in any of the specifications on which the verdict against him was directed, but gave explanations of some of them which tended to show that, as to them, he was not guilty of intentional misconduct. The verdict was well founded, therefore, as to all the specifications on which it was against him, except possibly that numbered eight, which alleges that he "frequently acted as attorney" etc., while there was evidence of only two instances of the kind. Did these acts constitute any one of the grounds of removal enumeratel in the complaint? However it may be with reference to oppression, extortion, or corruption, a bad motive for the act is not an essential element of wilful maladministration by an officer. "Wilful" means no more than that an act is "done with free activity of the perpetrator's will". Abbott's Law Dictionary. And maladministration is not in ordinary use distinguished from misadministration. Mechem on Public Officers, 457. There can be no doubt that it was gross misconduct for the defendant when he was sheriff to appear as attorney for one charged with crime before a justice of the peace, of his county. Although it was testified that on objection by the attorney for the accused, he said he laid aside his official position for the occasion, that could make no real difference, and he was lending his official influence to aid the accused person. So, by acting as attorney for the Quintanas and co-operating with them in an attempt to make Humphries pay twenty dollars which he was under no obligation to pay, he was clearly guilty of misconduct, if not of oppression. If it be said that what he did was not official misconduct, that he was not acting as sheriff, the reply is that in the Martinez case the evidence indicates that up to the time when his right to act as attorney for

the accused was questioned, he had the latter in his custody as sheriff, and only then turned him over to a constable. In the latter case his deputy had arrested the accused, and he was thereafter under official responsibility as to him up to the time when he gave bond. In the acts proved under the fourth specification and not denied by him he was beyond question acting officially. The undisputed evidence was that he arrested two men at least, for playing billiards at a table for which he claimed that the proprietor should have obtained a license, that he was intoxicated at the time and drew a revolver on one of the men he had arrested, who was unarmed, was not resisting, but on the contrary was at the moment conducting the sheriff to the bar of the saloon where they were on his invitation to "take a drink" which the sheriff had accepted. He did not keep the men whom he had arrested in custody or bring them to trial. Even if he believed, contrary to the fact, that the men he arrested were offending against the law, he could not be held excusable for such conduct.

The facts properly found by the verdict clearly constituted maladministration, at least, and warranted the judgment of removal by the District Court, which judgment is affirmed. And it is so ordered.

### SYLLABUS (BY THE COURT).

