HAWKINS v. COMMON COUNCIL OF THE CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—PUBLIC OFFICERS—REMOVAL FROM OFFICE—IMPEACHMENT PROCEEDINGS.

Municipal officers of a city are corporate, legislative, not constitutional, officers, and the power of removal is inherent in the corporation. The legislature has power to confer it upon a city council. Under the Constitution of

1850 the legislature was not prohibited from granting the said power.[1]

2. SAME—CONSTITUTIONAL LAW—GRAND RAPIDS CHARTER.

Power given to the city of Grand Rapids in its charter to remove* officers was but the recognition of an ancient usage and an incident inherent in municipalities and was valid under the former Constitution.

3. SAME—PUBLIC OFFICERS—CITY TREASURER.

Power to remove local officers does not exist exclusively in the governor under Act No. 149, Pub. Acts 1915, 1 Comp. Laws 1915, § 245. The provisions of Art. ix, § 7, of the Constitution confers upon the governor substantially the same general power to examine into the acts of any public officer elective or appointive, and to remove the same, as he previously had by the former Constitution.

4. SAME—CAUSE—CONTINUATION IN OFFICE.

Where removal may be made for cause only, the cause must have accrued during the present term of the officer: misconduct prior to the existing term will not justify removal, except where the accused officer continuing in office by re-election is charged with official misconduct during the preceding term.

5. SAME—REMOVAL OR AMOTION—REGULATION.

Under the authority of section 11, title 3, of the Grand Rapids charter, power is given to legislate for various purposes, amongst them being to provide for and regulate the election and appointment of all officers and for their removal from office and filling of vacancies and the language of title 3, being permissive, only, in relation to the regulation of means to be adopted, the procedure must nevertheless follow the method prescribed, including a record of the steps to be taken, a copy of the charges to be served, with ten days' notice of the time and place of hearing and opportunity to the accused to defend, etc.

6. SAME—PROCEDURE—CITY TREASURER—HEARING.

In trying the treasurer, an official who was in no manner beholden to the council for his office, which he held from the same source and by equal right with the members of the council, it was bound to a strict observance of

[1]For authorities passing on the question as to whether power conferred upon municipality to remove its officers is exclusive, see note in 20 L. R. A. (N. S.) 1128.

all statutory requirements and fundamentals of a fair and impartial trial of the accused. The fact that the charges were prepared by a committee of the council appointed for the purpose as the result of an investigation made by or under direction of that body, did not in itself disqualify the members from participating in the trial.

7. SAME—TRIAL—FAIR TRIAL.

But in passing upon impeachment charges a fair trial was not given by conducting a hasty proceeding all night and before several of the members sitting who had intimated their opinion before the hearing that accused was guilty, and in conjunction with a showing that the accused was limited in, or denied, his right to introduce evidence in his defense.

8. SAME.

It was illegal to permit members of the council to cast a vote for the removal of the city treasurer after hearing the evidence read by an unofficial stenographer engaged by the council for the occasion, and not previously sworn: only 15 out of 24 members attending all the sessions and hearing all the testimony, where a two-thirds vote of all was required to remove the official.

Certiorari by James S. Hawkins against the common council of the city of Grand Rapids to review its proceedings removing him from the office of city treasurer. Submitted April 19, 1916. (Docket No. 99.) Reversed and proceedings declared void July 21, 1916.

*Maynard & Chase,* for petitioner.

*R. M. Ferguson,* City Attorney, and *Charles A. Watt,* Assistant City Attorney, for respondent.

STEERE, J. Unfortunately the entitled "Statement of Facts" in petitioner's brief ignores the requirements of Rule 40 of this court, is meager of facts, and devoted largely to argument by adjective, necessitating resort to the voluminous two-volume record for a fair understanding of this case and history of the proceedings in it.

The record discloses that on August 16, 1915, so-called "impeachment charges" were drafted by a committee appointed for that purpose by the common council of the city of Grand Rapids, and presented to said body, accusing James S. Hawkins, treasurer of said city, petitioner herein, with official misconduct and improper performance of the duties of his office by reason of issuing tax certificates and certificates of redemption, securing the issuance of quitclaim deeds from the city, falsely representing the amount of the city's claim against certain property delinquent for taxes, altering deeds signed by authority of the common council, conspiring with unknown persons to defraud the city by obtaining transfer of the city's interests without adequate compensation to the city, etc., his alleged delinquencies, stated at great length and covering many alleged dishonest transactions, being in substance that he availed himself of his official position to dishonestly manipulate and deal in municipal tax claims and tax titles for profit in fraud of and against the rights of the city.

On August 30, 1915, petitioner appeared specially by counsel and moved dismissal of these charges for many reasons which need not be stated here, which motion was denied.

On September 8, 1915, a ten days' written notice of the time and place of hearing the charges by the common council was personally served upon petitioner, at which time he again appeared specially and by his counsel filed a motion to dismiss the proceedings on grounds previously stated and numerous others, which was also denied. Thereafter, reserving his rights under the motion to dismiss, he filed an answer, containing also what might be termed a demurrer to said charges. The council then adjourned the hearing until October 4, 1915, when, parties being present, the hearing was entered upon and taking of testimony begun.

Adjourned meetings for the hearing were held evenings, the matter being adjourned from one evening to another for taking testimony through eleven sessions until the evening of November 3, 1915. An adjournment to this meeting from November 1st was at the request of petitioner's counsel, who stated that they were not then prepared to go on with the defense, but would be present at the next meeting and take such steps as they desired, although it was understood that the parties would put in some testimony at this adjourned meeting, of November 3d, and that all the testimony which had been taken should be read by the stenographer to the aldermen before they voted. When the meeting convened, petitioner's counsel renewed his motion to dismiss, and, after further cross-examination of a witness who was produced, announced they were unable to proceed further for various reasons which he urged—among others, that the city's case was not in because it was understood that the testimony was yet to be read over. After some acrimonious discussion, it was decided the hearing should proceed, and reading of testimony was entered upon, which, with interspersed discussion and voting upon each of the charges and specifications under them, occupied the entire night. In the early morning, without intermission and against protest of petitioner's counsel with renewed request for further time in which to prepare and present his case, a resolution was adopted by a vote of 19 to 1, which, with recitals that the council had during the past month listened to the evidence produced in support of the charges, at which hearings petitioner was present in person or by counsel and given every opportunity to put in a defense, that said evidence had been re-read in whole to the council after it was taken, and the council had voted severally on the six charges filed and each specification thereunder, concludes as follows:

"Resolved further, that said James S. Hawkins be and he is hereby removed from the office of and as treasurer of the city of Grand Rapids, on account of and by reason of being guilty of the said several charges and specifications aforesaid; and that said office be, and it is declared vacant from and after November 4, 1915."

The common council of the city of Grand Rapids consisted of 24 members, 20 were present and voting at the time this resolution was adopted. Of these, but 15 had attended all the meetings and heard all the testimony, except as read that night by the stenographer who had not been sworn, nor so far as shown officially selected to act in the proceeding.

It appears undisputed that the charges all covered acts alleged to have been committed prior to respondent's induction into his then term of office, which began May 3, 1915; he having filled the office by election during previous terms and being his own successor.

Among the errors, or objections, urged in behalf of petitioner are, in substance, that the common council of the city of Grand Rapids had no jurisdiction to hear and determine charges for impeachment of an elective city officer, but the sole power of removal rested with the governor; that the provisions of the charter of Grand Rapids authorizing the council to remove a city officer are not self-executing, but the charter requires adoption of an ordinance or some other official action providing the method, machinery, and course to be pursued by the council when sitting as a court of impeachment; that an officer cannot be removed for acts done prior to his then present term of office; that the common council was disqualified to sit as a court of impeachment because certain of its members who participated and voted had prejudged the case and expressed opinions that petitioner was guilty before any testimony was taken; that the resolution was not

adopted by a two-thirds vote, because only 15 members of said "court" attended all the sessions and heard all the testimony; that continuing in session all night without any manifest reason therefor, and immediately thereafter taking final action at so early and untimely an hour, against the protests of petitioner and request for time in which to make his defense, was inimical to a full and fair trial and conducive to a miscarriage of justice; that the charges were insufficient, not cause for removal under the charter; that errors were made in the admission and rejection of testimony; and that the proceedings were without due process of law and in contravention of the Constitution of the United States and of the State of Michigan.

These proceedings were instituted under section 11, tit. 2, of the charter of the city of Grand Rapids, as revised by the legislature of 1905 (Act No. 593, Local Acts 1905), which provides in part:

"Any elective or appointive officer of the city except judges or justices of the peace may be removed by the common council for official misconduct, or for unfaithful or improper performance of the duties of his office," etc.

This section also requires that the proceedings shall be entered of record, a copy of the charges shall be served upon said officer with notice of the time and place of hearing at least 10 days prior thereto, and an affirmative vote of two-thirds of all aldermen elected shall be necessary for his removal.

It is contended this provision of the charter is unconstitutional because unauthorized by section 7, art. 12, of the old Constitution, of 1850, in force when the charter was adopted, which says, "The legislature shall provide by law for the removal of any officer elected by a county, township, or school district, in such manner and for such cause as to them shall seem just and proper," making no mention of city and village officers,

while section 8, art. 9, of the present Constitution, of 1909, substituted for the above section does as follows:

"Any officer elected by a county, city, village, township or school district, may be removed from office in such manner and for such cause as shall be prescribed by law."

From this it is urged that those who framed the new Constitution construed the old as conferring no power upon legislatures to provide for removal of city and village officers.

The address to the people from the constitutional convention, made under statutory requirement, stated "that none of the eight sections of article 9 are changed in any manner except for the purpose of phraseology" and certain purposes foreign to this question.

It is evident that no power is given cities and villages to remove their officers under said section 7 of the old Constitution, but it does not follow that they had no such power. Their officers are corporate, legislative officers, not constitutional. The power to remove their officers is, and was long before the adoption of our Constitution, inherent in municipal corporations. 2 Dillon on Mun. Corp. (5th Ed.) § 462; 2 McQuillin on Mun. Corp. § 552; *Speed v. Common Council of Detroit*, 98 Mich. 360 (57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555). In that case the authority of the legislature to confer such power upon a city council is recognized. There were cities and villages in Michigan before it became a State—municipalities for local government of common-law origin and with common-law rights, self-governing communities in matters of strictly local concern. The Constitution of 1850 in dealing with this subject, and authorizing the legislature to provide for the incorporation of cities and villages nowhere prohibits the legislature

from conferring the power in question, but as a whole the constitutional provisions upon the subject give reason for inference to the contrary. The intended limitations are well defined and powers granted in general terms. By section 13, art. 15:

"The legislature shall provide for the incorporation and organization of cities and villages, and shall restrict their powers of taxation, borrowing money, contracting debts and loaning their credit."

Section 14, art. 15, provides:

"Judicial officers of cities and villages shall be elected and all other officers shall be elected or appointed at such time and in such manner as the legislature may direct."

And, in general, by section 38, art. 4:

"The legislature may confer upon organized townships, incorporated cities, and villages, and upon the board of supervisors of the several counties, such powers of a local, legislative, and administrative character as they may deem proper."

The power conferred in the charter of Grand Rapids to remove its officers was but recognition of ancient usage, and an inherent incident of its incorporation, with stated limitations, was forbidden by no constitutional restriction and thus expressly conferred by its accepted charter, governed and limited corporate action in that particular. *People* v. *Hurlbut*, 24 Mich. 44 (9 Am. Rep. 103).

Neither can we recognize force in the contention that the power to remove local officers rests exclusively in the governor of the State, and the provision of the charter in question, if otherwise of any validity, is repealed by Act No. 149, Pub. Acts 1915, providing in part:

"SEC. 6. The governor may remove all county officers chosen by the electors of any county or appointed

by him; and shall also remove all justices of the peace and township officers chosen by the electors of any township; or city or village officers chosen by the electors of any city or village, or any ward or voting district thereof, when he shall be satisfied from sufficient evidence submitted to him as hereinafter provided, that such officer is incompetent to execute properly the duties of his office, or has been guilty of official misconduct, or of wilful neglect of duty. or of extortion," etc.

This is but an amendment of Act No. 190, Pub. Acts 1879 (1 Comp. Laws, § 1159, 1 Comp. Laws 1915, § 245), and so far as applicable here is in the exact language of the former act, which it reaffirms; the minor particulars in which section 6 is amended being altogether foreign to the question raised here.

The provisions of section 7, art. 9, of the new Constitution, and section 8, art. 12, of the old, confer upon the governor the same general powers to examine into the acts of any public officer, elective or appointive, and remove him for stated causes. Said Act No. 190 of 1879 (amended in 1915) is but affirmative legislation in harmony with those constitutional provisions defining procedure for exercising the constitutional authority. Even where repeal by implication is inferable, the old law is repealed only *pro tanto*—to the extent of the repugnancy. There is nothing in the Constitution or legislation making this power exclusive or forbidding the legislature from also conferring the power to remove its own officers upon municipalities. When this is done, concurrent power exists and resort may be had to either. In view of the so-called "home rule" provision for cities found in the new Constitution and the trend of legislation in that direction, it is difficult to find in the new Constitution, or legislation under it, any indication of a purpose to restrict or repeal any municipal rights or privileges existing under the former Constitution and previously existing city

charters, and we can discover no inferences of that import here.

It is stated broadly in 29 Cyc. p. 1410, that:

"Where removal may be made for cause only, the cause must have accrued during the present term of the officer. Misconduct prior to the present term even during a preceding term will not justify a removal."

This statement in its entirety appears to find support in some authorities cited. *Thurston* v. *Clarke,* 107 Cal. 285 (40 Pac. 435) ; *State* v. *Jersey City,* 25 N. J. Law, 536; *Conant* v. *Grogan,* 6 N. Y. St. Rep. 322. While other well-considered cases, recognizing the general rule, make an exception where the accused officer, continuing in office by re-election, was charged with official misconduct in the same office during a preceding term. *State* v. *Bourgeois,* 45 La. Ann. 1350 14 South. 28) ; *Brackenridge* v. *State,* 27 Tex. App. 513 (11 S. W. 630, 4 L. R. A. 360) ; *State* v. *Welsh,* 109 Iowa, 19 (79 N. W. 369). Counsel for petitioner also cite and quote as follows from *Gill* v. *Watertown,* 9 Wis. 254:

"There are a number of charges, but the return admits that all except the last, relates to acts or omissions of the relator during a prior term of office. Now, without examining those charges, to determine whether they would show good cause of removal, if occurring during the term, when the removal was sought, which we think very doubtful, yet we think it a sufficient answer to them, that they did not relate to anything occurring during that term."

Stopping here this seems quite conclusive, but in the next sentence the court said:

"We do not say that in no case could acts done during a prior term justify a removal. Thus, if, after a treasurer was elected, it should be discovered that during his prior term he had committed a defalcation, and been guilty of gross frauds in the management of

his office, it might perhaps be just grounds for removal."

The case of *Speed* v. *Common Council of Detroit, supra,* which states the general doctrine that "the misconduct for which an officer may be removed must be found in his acts and conduct in the office from which his removal is sought," is not directly in point, because Speed had not previous to his then term been an incumbent of the office from which it was sought to remove him. We are not prepared to find in this case, nor to hold as a general rule, that the misconduct of an officer, who is his own successor, committed during the preceding term, may not be inquired into and furnish ground for his removal.

Under title 3 of the Grand Rapids Charter (Act No. 593, Local Acts 1905), entitled "Powers and Duties of the Common Council," power is given to legislate for various purposes, amongst which is:

"SEC. 11. To provide for and regulate the election and appointment of all officers and for their removal from office, and the filling of vacancies."

It is urged this was a mandatory prerequisite to exercising the power, and, because the council had not passed a guiding ordinance or otherwise provided by legislation any regulations or course of procedure for removal from office, this hearing was a nullity. Having been given in general terms, under title 2 of the charter, a limited power of removal for cause, the language used in title 3 seems to suggest a legislative intent that before exercising such power the council would prescribe rules, or regulate by some preadopted method the manner in which it would be administered. Considerations of fairness, certainty, and convenience suggest the wisdom of such a course before assuming to exercise the power. The language of the charter appears to be in its nature permissive and directory rather than imperative.

It was said in *State* v. *Walbridge,* 119 Mo. 383 (24 S. W. 457, 41 Am. St. Rep. 663):

"It is true that neither charter nor ordinance make any provision for the means whereby the amotion of an appointive officer is to be effected; but, where a grant of power is given, all the means necessary to effectuate the power pass as incidents of the grant."

While this omission may be an element entering into consideration of what was done, we cannot say that it *ipso facto* nullified the action of the council because in direct violation of a mandatory provision. Limited authority to remove for cause being conferred upon the council, the mandatory requirements are that the steps taken in that behalf be recorded in its proceedings, a copy of the charges be served with 10 days' notice of time and place of hearing, opportunity to the accused to make a defense to such charges, and a two-thirds affirmative vote of all aldermen elect.

After written charges are preferred and notice given to the accused officer, the council, in session as such, at the legally noticed time and place of hearing, with the necessary quorum in attendance, complies with all statutory requirements in that particular, and may enter upon the hearing, the proceedings of which are to be entered in its records, without any reorganization or special formalities to resolve itself into a court. The members of the council are not judicial officers and when acting as a removing board that body is not a court in any strict sense nor bound by all the rules and technicalities recognized and enforced in regularly constituted courts; but when proceeding to hear and determine, in the exercise of the limited power to remove for cause an elective officer, the hearing is judicial in its nature, the body necessarily acts in a *quasi* judicial capacity, and the procedure must be of a *quasi* judicial character. *Fuller* v. *Attorney General,* 98

Mich. 96 (57 N. W. 33) ; *Speed* v. *Common Council of Detroit, supra.*

In this case the council was sitting in judgment upon the right of a public officer who was in no manner beholden to it for his office, which he held from the same source and by the same right as the members of the council did theirs.  In the essentials of cause and effect the aim and object of the hearing were not only to depose an unworthy officer for official delinquencies, but to degrade and punish him.  With such issues involved, while not bound by the technical rules of a regular court and within certain limits a law unto itself, the council was bound to strict observance of all statutory requirements and the fundamentals of a fair and impartial trial of the accused.  The fact that the charges were prepared by a committee of the council appointed for that purpose, as the result of an investigation made by or under direction of that body, did not in itself disqualify the members from participating in the hearing and determination of the matter, even though impressed that, unexplained, there was reasonable ground for such charges.  It was, however, essential that those participating be qualified to act fairly and impartially, without prejudice, personal interest, or ill feeling toward the accused, in a frame of mind ready and willing to hear, weigh, and judicially pass upon the evidence produced, and in the end determine the case upon its merits as disclosed upon the hearing. Although the matter of these charges had then apparently been before the council and under discussion for some time, notice that they would be heard on September 20th having been served on petitioner, the hearing, or trial, was begun on the evening of October 4th pursuant to a motion that they "proceed to the trial," carried by the mayor's vote which broke a tie of 11 for and 11 against the motion, after which the

city attorney proceeded with introduction of evidence to support the charges. This motion to take up the hearing appears to have been argued, or discussed, by certain members of the council at considerable length, and during the discussion a member in urging the motion said of certain charges:

"There is no question about the facts in that case; they have been before us. Mr. Hawkins admits he issued deed after deed without any special authorization of the council, unless it is covered by the resolution in the year 1902. * * * I am just as well prepared at the present time to vote on any one of those three charges, as to whether in my belief and judgment there is sufficient to remove Mr. Hawkins from office, as I will be next December. * * * I think we better dispose of those that we have before us that we have been threshing over for five or six months. If they are established, it may be that a majority of the council will think that it is enough to remove him. If they do, that is all there is to it. He is just as much hung as if he was hung a dozen times."

Another member expressed the view that the preceding man was not entirely conversant with all the details of the proposition, and said:

"It may be very desirable indeed, before we are through, to amend or formulate other charges, and that Mr. Hawkins be tried on other charges than the ones now before this council. I believe it is a good thing not to attempt to force some one to call your hand when you have only three deuces and you are trying to bluff that you have got four aces."

Still another member announced:

"I want to say, the defense seems to think we are a court, now that we are going; he says we are. I want him to understand we are not only a court, as I understand it, but we are the jury, and a public jury, where everybody can hear the jury's deliberations. In connection with giving the attorney for the other side an opportunity to know what we have got, some of the

aldermen seem willing to let him know by asking certain questions which the city attorney has answered," etc.

These three members voted for removal.

It is said in the brief of counsel for respondent that some of the foregoing remarks were made late in the progress of the hearing; but the record by which we must be governed shows them to have occurred as stated, on October 4th before the first witness was called. Later, another member, who voted for removal, said, in opposition to a movement for delay:

"It seems to me every night we meet we are delayed about an hour listening to different aldermen's opinions in regard to this case. * * * I think we have enough charges now without waiting for the auditor to bring forth any more and try to hang him half a dozen times. I move we go ahead with this trial."

Whatever the merits of petitioner's request for more time in which to present his defense, these matters, taken in connection with insistence on closing and deciding the case, at an unusual hour, without an intermission, in the early morning after continuation of the hearing during the entire night, are not in harmony with what is commonly recognized as proper, fair, and impartial administration of justice in an inquiry judicial in its nature. No special circumstances are shown calling for hasty action at such an untimely hour, in this investigation directed to the serious question of deposing and degrading an elective officer who, whatever his previous delinquencies, had been during his then incumbency which began the preceding spring, so far as charged or shown, as free from official misconduct as any member of the council.

Another serious, and statutory, infirmity in this proceeding, is the fact that but 15 out of 24 members of the council had attended all its sessions devoted to the hearing and heard all the testimony. A two-thirds af-

firmative vote of the members elect was required to remove petitioner. Of those voting, that many did not hear all the evidence or take part in all the proceedings. It was sought to cure this by having the stenographer read to those who voted all the testimony he had taken. He had no official connection with the case, was not sworn or appointed under any ordinance, or even pursuant to any resolution of the council, so far as shown, and the charter makes no provision authorizing this substitute for attendance. We think the charter contemplates and requires that, when exercising its limited power to remove for cause a public officer by such *quasi* judicial proceeding, there must be an affirmative vote amounting to two-thirds of the members elect, cast by members who participated in all the proceedings and heard all the evidence given by the witnesses who appeared and testified.

For the foregoing reasons, the action of respondent council in deposing petitioner and declaring his office vacant after November 4, 1915, must be, and the same hereby is, reversed, set aside, and held for naught.

STONE, C. J., and KUHN, MOORE, BROOKE, and PERSON, JJ., concurred with STEERE, J.

OSTRANDER, J. I concur in the result upon the ground that petitioner was denied a reasonable opportunity to put in his defense.

BIRD, J., did not sit.