STATE OF IOWA, Appellant, v. JOHN W. WELSH.

**Sheriff and County Board:** WORKING PRISONERS. Under Code, sections 5653, 5654, requiring the work of prisoners to be done during such reasonable time of the day as the person having charge of them may direct not exceeding eight hours, but in accordance with regulations of the board of supervisors, the sheriff may fix the time prisoners shall work regardless of any resolution of the board.

SAME: *Removal.* To justify his removal from office for failure to comply with the directions of the board of supervisors, the misconduct of the sheriff must be willful and habitual.

**Misconduct in Office:** SHERIFF. Where a sheriff is allowed compensation by the county for the services of a bailiff, he is not entitled to fees earned by the latter in that capacity and if, besides receiving compensation for services of a bailiff in serving papers, he procures the allowance to himself of fees for services of the latter, knowing that he is not entitled thereto, he is guilty of corruption in office, though he makes no false returns, and may be removed therefor.

RE-ELECTED OFFICER: *Removal.* Misconduct in office during a preceding term is ground for removal of a sheriff who succeeds himself.

SAME. Voluntary intoxication while engaged in the performance of an official duty, is such willful misconduct on the part of the sheriff as to justify his removal, especially where it results in his allowing a prisoner committed to his charge, his liberty for thirty hours.

**Appeal:** SHORT HAND REPORT: *Bill of exceptions.* A bill of exceptions, containing only such matter as will enable the court to pass on errors-assigned, and certified in substantial compliance with the statute, is sufficient.

SAME. Under Code, section 3675, entitling a party to have reported the whole proceedings on the trial, and making such report, when certified and filed as required, a complete bill of exceptions, a partial report, properly certified and filed, and containing merely the evidence and objections, rulings and exceptions, is a sufficient bill, where the errors assigned are all on rulings on the admissibility or effect of the evidence.

CERTIFICATE. Under Code, section 3675, providing that the report of the proceedings on the trial shall be certified by the reporter and the trial judge, to the effect that it contains a full, true, and complete report of all the proceedings had, a certificate that the report contains all the evidence offered or introduced, and all the objections and rulings made and exceptions taken, is sufficient.

PRELIMINARY ORDER NEEDLESS. Under Code, section 3675, entitling any party to have the proceedings on the trial reported, and providing that the judge shall direct the reporter to make such report, which, when certified and filed as required, constitutes a bill of exceptions, no preliminary order directing the proceedings to be taken down is necessary to make the report part of the record.

*Appeal from Johnson District Court.*—HON. A. J. HOUSE, Judge.

SATURDAY, MAY 27, 1899.

ACTION to remove the defendant from the office of sheriff. From a judgment on a directed verdict, the state appeals.—*Reversed.*

*Chas. M. Dutcher* and *Chas. H. Burton* for the State.

*Ranck & Bradley, Baker & Ball,* and *J. J. Ney* for appellee.

LADD, J.—The bill of exceptions need only contain such matter as will enable the court to pass on the errors assigned. *Philbrick v. Town of University Place,* 106 Iowa, 352. Section 3675 of the Code does not change this rule. It provides for the preparation of a full and complete bill. A partial bill may be prepared in the

same manner; and, if the errors assigned are based entirely on rulings on the admissibility of evidence or its effect, it is sufficient if the evidence offered and received, together with the objections, rulings, and exceptions, is duly certified and filed as therein directed. Nor must the precise language of the statute be followed. The officers are required only, in effect, to certify that the report "contains a full, true, and complete report of all the proceedings had." As applied to the evidence, the certificates did this, and were substantially like those approved in *Hurlburt v. Fyock,* 73 Iowa, 478; *Fleming v. Stearns,* 79 Iowa, 256. As the law formerly stood, the reporting of a trial was discretionary with the judge. *State v. Frost,* 95 Iowa, 448. The effect of section 3675 is to make it mandatory upon the request of either party. The purpose is to preserve a record, and if the proceedings are in fact taken down in shorthand, and duly certified, they become such regardless of any preliminary order. It follows that the motion to strike the evidence should be overruled.

II. The defendant was re-elected sheriff of Johnson county at the general election of 1898, and during his second term, commencing January 1st of the year following, this action for his removal was begun. On motion, the particular averments of official misconduct and neglect of duty during the first term were stricken from the petition on the ground that removals are only allowable for acts during the term being served. The statute contains no such limitation. The very object of removal is to rid the community of a corrupt, incapable, or unworthy official. His acts during his previous term quite as effectually stamp him as such as those of that he may be serving. Re-election does not condone the offense. Misconduct may not have been discovered prior to election, and, in any event, had not been established in the manner contemplated by the statute. The defendant was entitled to the office until his successor was elected and qualified. Code, section 1265.

Being his own successor, the identical officer continued through both terms. His disqualification to continue in the particular office results from the commission of some of the prohibited acts during his incumbency. *State v. Bourgeois,* 45 La. 1350 (14 South. Rep. 28); *Blackenridge v. State,* 27 Tex. App. 513 (11 S. W. Rep. 631). This has been the uniform rule in impeachment trials, where, coupled with removal from office, is the penalty of disqualification to hold any office of honor, trust, or profit under the state. In New York, Judge Barnard was impeached during his second term for acts committed in that previous. The same was true of the impeachment of Judge Hubble, of Wisconsin, and Gov. Butler, of Nebraska. Whether the impeachment may take place after the expiration of the term or resignation is a mooted question. See arguments on the trial of Belknap before the United States senate. The supreme court of Nebraska, in an able and exhaustive opinion by Mr. Justice Norval, held, in *State v. Hill,* 37 Neb. 80 (55 N. W. Rep. 794), that, as the primary object is removal from office, ex-officials cannot be impeached, saying: "The object of impeachment is to remove a corrupt or unworthy officer. If his term has expired, and he is no longer in office, that object is attained, and the reason of his impeachment no longer exists; but, if the offender is still an officer, he is amenable to impeachment, although the acts charged were committed in his previous term of the same office." We do not overlook *Thurston v. Clark,* 107 Cal. 285 (40 Pac. Rep. 435), where in referring to the previous case of *Smith v. Ling,* 68 Cal. 324 (9 Pac. Rep. 171), holding an action for removal could not be maintained after the expiration of the term, the court said: "By parity of reasoning, an officer cannot * * * be removed from office for a violation of his duties while serving in another office, or in another term of the same office. Each term of office is an entirety, separate and distinct from all other terms of the same office." It is doubtless true that a removal cannot be had on account of misconduct

in another office, but only so because such a provision may not be included among the statutory causes of removal. *Speed v. Common Council of Detroit,* 98 Mich. 360, 39 Am. St. 555 (57 N. W. Rep. 406). This may also be said of offenses committed previous to being inducted into the particular office. *Com. v. Shaver,* 3 Watts & S. 338; *Tyrrell v. Common Council of Jersey City,* 25 N. J. Law, 536. For many purposes each term of office is separate and entire. This is especially true with respect to the obligation of sureties. But there is no reason for so holding as to the incumbent. Being his own successor, there is no interregnum. His qualification marks the only connection between his terms. The commission of any of the prohibited acts the day before quite as particularly stamps him as an improper person to be intrusted with the performance of the duties of the particular office, as though done the day after. The fact of guilt with respect to that office warrants the conclusion that he may no longer with safety be trusted in discharging his duties.

III. The allegation that "the defendant negligently failed and refused to comply with the direction and order of the board of supervisors" requiring him to work prisoners eight hours per day, and that he in fact worked them but seven hours per day, was properly stricken on motion. The neglect of duty must be habitual or willful, and that it was either is not stated. Besides, the sheriff had the right to fix the time prisoners should work, regardless of any resolution of the board. Section 5653 requires this to be done "during such reasonable time of the day the person having charge of the prisoners may direct, not exceeding eight hours each day." The length of time they should labor depends upon the character of the work, the season of the year, their strength and condition of health, whether accustomed to labor, and must necessarily be left largely to the discretion of the officer most likely to understand their capabilities. The labor, when done, however, should be in

accordance with the rules and regulations of the board. Code, section 5654.

IV. The petition averred, in substance, that the defendant fraudulently and willfully drew from the county two dollars per day for the service of one Clark, as bailiff who was in his employ at a monthly salary, when the latter was performing only the duties required of the sheriff, and that, when Clark was in fact acting as bailiff, he served venires on certain persons to act as jurors, and other papers, and that the defendant fraudulently and willfully procured fees for serving said venires and other papers to be taxed in his favor, and afterwards allowed by the county. Without entering into details, it may be stated generally that the defendant could not properly draw compensation from the county for Clark's services as bailiff, and also for fees earned by him when actually serving in that capacity. If, for any reason, he was required as deputy, in serving papers or process, during his attendance on court as bailiff, no claim for his work as such for the time so occupied should have been made. It seemed to have been the notion of the court that even though fees or compensation were obtained from the county, as alleged, unless this was accomplished through false returns made for that purpose, the defendant must be held blameless. We discover no reason for such a conclusion. If, at any time before obtaining the money from the county, the defendant learned that he was not entitled to it, and nevertheless, through deception, procured it, he was guilty of corruption.

V. The evidence tended to show that the defendant, while in Cedar Rapids, having in his custody a prisoner sentenced to serve a term of seven and a half years in the penitentiary at Anamosa, and on the way to that place, became intoxicated, and allowed the prisoner his liberty for about thirty hours. If witnesses are be believed, he drank whisky from the prisoner's bottle, and partook of beer with him at four different saloons in suc-

cession; leaving him at the last one while he visited the residence of a woman who has since, at the suggestion of the police, departed the city. Without again finding the prisoner, he returned to Iowa City, and did not attempt to apprehend him until the following day. According to the testimony of this woman, he was intoxicated, and others state that he was under the influence of liquor. We refer to these matters in order to show that the jury might have found from the evidence that the defendant was intoxicated, and that he voluntarily left the prisoner to go at will. Intoxication, when not occurring while in the discharge of an official duty, is not a ground of removal from office. The character of the man, in such a case, must be kept apart from that of the officer. But we entertain no doubt that voluntary intoxication while engaged in the performance of an official duty is such willful misconduct as is contemplated by the statute. *Ledbetter v. State,* 10 Ala. 241. See *McComas v. Krug,* 81 Ind. 328. It is doing that which all men know will tend to render him incapable of accomplishing that which is required. But, apart from this, the evidence showed that the defendant left the prisoner without any one in charge of him. He whom the law had condemned to a term of years in the penitentiary was allowed his liberty for thirty hours. It was the sheriff's duty to keep him in custody continually, and in awarding him the freedom of a city, if willfully done, he was guilty of willful neglect of duty.—Reversed.