TIBBS *v.* CITY OF ATLANTA.

1. A judgment of a board of police commissioners, discharging a policeman, after a trial in the manner prescribed by the law creating the board, is subject to review on certiorari.

2. Where the charter of a city vests the authority in such a board to select, control, and discipline the police force of the city, and no provision is made for disqualifying a member from acting in a case where he may be biased or prejudiced against the policeman on trial, an objection can not be properly made to a member of a board participating in the trial on this ground.

3. Where the membership of the board is increased by a statute enacted pending a trial, the new member added under the authority of such a statute has no right to participate in the trial, and this is true although the person who has become a member was present at all the sittings of the board and heard all the evidence adduced on the trial.

4. A board of police commissioners may discharge a policeman for conduct prior to his employment, when it subsequently appears that such conduct would disqualify the person from efficient service, or the retention of such person is not calculated to improve the discipline or efficiency of the force. Especially is this true where the conduct consists of acts done during a previous term of service as a policeman.

5. The result of a trial before such a board, as expressed in its findings, like a verdict in an ordinary case, is to have a reasonable intendment, and a reasonable construction, and is not to be set aside except for necessity.

6. The finding of the board in the present case was in effect that the policeman was guilty as charged, and, as such, was authorized by the evidence.

Argued February 19,—Decided March 22, 1906.

Certiorari. Before Judge Pendleton. Fulton superior court. December 18, 1905.

Tibbs, a patrolman in the police department of the City of Atlanta, was tried before the board of police commissioners upon certain charges, specification No. 2 being in the following language: "Circulating false reports against an officer, knowing them to be false when so circulated." This was afterwards amplified so as to read as follows: "That officer Tibbs, on March 26, 1903, circulated a report by making an affidavit which is dated March 26, 1903, in which he states that on Monday morning, which was March 23, in which he claims I made use of the following expression: 'I heard him talking about Paul Hubbard; I don't give a damn; I have got four commissioners on my side, and I am going to do as I damn please while I am down here,' etc., the same being untrue when so made." A hearing was had at which Tibbs was present, represented by counsel. Witnesses for both sides were sworn and examined. Tibbs was acquitted of all the charges save specification No. 2, the finding of the board on that charge being as follows: "that he [Tibbs] be found guilty of charge and specification No. 2, in that he made an affidavit that Captain Moon had used certain language, in speaking about Paul Hubbard and the commissioners, which had not been proven true." A motion was then adopted, "that he [Tibbs] be discharged from the force." Tibbs applied to the superior court of Fulton county for a writ of certiorari, and in his petition assigned error upon the finding of the board of commissioners, for the following reasons: (1) That, over the objection of Tibbs, a designated member of the board was permitted to participate in the trial, who had used expressions, prior to the hearing,

showing bias and prejudice against him. (2) That the board of commissioners refused to permit the chairman of the police committee of the city council of Atlanta to participate in the trial, an amendment to the charter of the City of Atlanta having been passed, pending the trial, making the chairman of that committee, ex officio, a member of the board of police commissioners. (3) That the board of commissioners refused, upon motion made by a member, to reconsider their action. (4) That the verdict was contrary to the evidence. Errors were also assigned upon the form of the judgment. The writ was sanctioned, the board of commissioners answered, and, after a hearing, the certiorari was overruled. To this ruling Tibbs excepted.

*Walter McElreath,* for plaintiff in error.

*James L. Mayson* and *W. P. Hill,* contra.

COBB, P. J. (After stating the foregoing facts.)

1. The proceeding before the board of police commissioners was quasi judicial in its nature, and the judgment of the board is subject to review like that of any other tribunal exercising judicial functions. See *Carr* v. *Augusta,* 124 *Ga.* 116; *Gill* v. *Brunswick,* 118 *Ga.* 85, and cit.

2. The board, as organized for the purpose of trial, if not technically a court, was certainly about to proceed in the exercise of judicial functions. Its members partook both of the nature of judges and jurors. They were to decide both the law and the facts of the case under consideration. While they had imposed upon them the duties usually required of jurors, they acted more in the nature of judges than jurors. That is, they were judges authorized by law to pass upon questions of fact. They are to be dealt with, therefore, under the rules controlling the powers, duties, and conduct of judges. The accused, at the inception of the trial, objected to one of the members of the board presiding in the case, the ground of objection being that he had, prior to the trial of the case, used expressions indicating bias or prejudice against the accused. The board overruled this objection, and the trial proceeded, with the alleged disqualified member participating so far as the hearing of evidence and argument, and consultation, were concerned. It appears from the record that he did not vote upon the question of guilt or innocence, nor on the question of the punishment to be imposed. It is claimed that his presence on the board during the

progress of the case vitiated the trial. It is an ancient rule that a man can not be a judge in his own case. The maxim which lays down this rule is founded upon common justice and common decency. It was said in one case that even an act of parliament could not make a man a judge in his own case. Day *v.* Savage, Hob. 87. There are rulings in this country to the effect that it is beyond the scope of legislative authority to confer power upon a person to act as a judge in his own case. 17 Am. & Eng. Enc. Law (2d ed.), 733. At common law, when the judge had an interest in the case, that is, such an interest as would disqualify a witness under the common-law rule, he was prohibited from presiding in the case. Relationship to a party, or having acted as counsel, or having presided in the case as a judge in an inferior court, did not disqualify a judge at common law. These are grounds of disqualification under the statute in this State, if the degree of relationship is within the fourth degree of consanguinity or affinity. Civil Code, § 4045. Prejudice or bias on the part of the judge, not based on interest, nor on any other ground not named in the statute, exhibition of partisan feeling, or unnecessary expression of opinion upon the justice or merits of the controversy, are, as a general rule, not assignable as a ground for disqualification. While the use, by one who is to preside in a case, of expressions indicating bias or prejudice against a party are exceedingly indecorous, improper, and reprehensible, and calculated to throw suspicion upon the administration of the law, in the absence of a statute they can not be made a ground of disqualification. 17 Am. & Eng. Enc. Law (2d ed.), 738; Taylor *v.* Williams, 36 Tex. 583; In re Davis' estate (Mont.), 27 Pac. 342; Sjorberg *v.* Nordin (Minn.), 5 N. W. 677; McDowell *v.* Levy (Cal.), 8 Pac. 857. The judge who is conscious of prejudice or bias in his own mind might well decline to preside, and even if unconscious of it, if such an objection is made and the circumstances are such that his presiding would be calculated to bring discredit upon the administration of the law, he might with propriety refuse to participate in the trial. But if a judge so situated is a member of a board, and there is no provision of law for filling his place in case he should be disqualified or should decline to preside, and his absence would reduce the board to a number less than a quorum, he should not refuse to participate in the trial, and thus prevent the due course of the administration of the law. There

being nothing in the general law of this State which would disqualify the member of the board to whom objection was made, and there being nothing in the act creating the board which would have this effect, the objection of the accused to the member sitting was properly overruled.

3. While the trial was pending, an act of the General Assembly was passed increasing the membership of the board of police commissioners by making the chairman of the police committee of the city council, ex officio, a member. The person who held this position at the time the trial began, as well as at the time that the act was passed, was present as a spectator during all the stages of the trial, and, after the passage of the act, asked that he be allowed to take part in the subsequent proceedings of the trial as a member of the board. The board declined to allow him to take any part in the trial as a member of the board. There was no error in this ruling. While he heard the evidence, he was not a member of the board at the time he heard it, and therefore did not hear it under those conditions under which the law contemplates that one acting as a judge should hear it. He did not realize, at the time that he heard the evidence, that he was to pass upon it in a judicial capacity, and it is natural that he would not have paid such attention to what was transpiring before the board as he would have done if he had been conscious of the responsibility resting upon him. In addition to this, the trial should be had before the board as it was constituted by law at the time the trial began; and it is not to be presumed that the General Assembly intended that the new member should participate in a pending trial. In the absence of express terms in the legislative act, a result such as would have been brought about by allowing the new member to preside will not be permitted. It is by no means clear that the General Assembly would have the power to do it by express declaration.

4. It was contended that the board had no right to discharge Tibbs, for the reason that the act he was charged with had been committed before his term of service began. It appeared that Tibbs had been serving as a policeman and that his term had expired, and it was during the service of this expired term that he committed the act charged against him. He was afterwards re-elected. The contention is that after a policeman has been elected

the board of police commissioners have no right to discharge him for conduct prior to his election, if such conduct was known to the board at the time of his election. We can not assent to a proposition which will so hamper the board in its control of the officers of the police department. The board may know of the conduct of an individual who is elected, and at the time of the election may not have a just appreciation of the injurious effects upon the efficiency and discipline of the force that the election of such a person would have; and it would be disastrous to the public interests if they were compelled to keep in the employ of the city a policeman whose conduct was, prior to his election, of such a character as to make him a disturbing element in the force. As was said by Judge Jackson, in his concurring opinion in *Queen* v. *City of Atlanta, 59 Ga. 322,* "The police commissioners, in my judgment, have full control of the police force of the City of Atlanta. It is their duty to see to it that this force is fit for duty, and it may take cognizance of the conduct of the police, past or present, which unfits them, or either of them, for duty. . . The jurisdiction of the commissioners extends over his whole character and conduct. And it ought to be so." Especially would this be true in a case where a policeman had been serving the city, had been re-elected from time to time, and the conduct which was made the basis of the discharge was an act done while he was a policeman, and it was of such a nature as inevitably to produce serious injury to the proper discipline of the force.

5. The finding of the board is not couched in that perspicuous language which would be used by an accurate and painstaking lawyer, but, being in effect the verdict in the case, it at least should be dealt with in the same way that the law deals with an ordinary verdict. Every reasonable intendment is to be indulged in its favor. A reasonable construction is to be placed upon its language, and it is not to be avoided and set aside unless it is absolutely impossible to determine what was the intent of the commissioners. There can be no doubt that it was the intent of the commissioners to find the accused guilty of specification No. 2 in the charge. The latter part of the finding does produce some confusion, and one disposed to be hypercritical might see in these words that the police commissioners had placed the burden upon the accused of proving his innocence. But such is not a reasonable

construction of the verdict. It means simply this: the accused is guilty of circulating a report which we find to be false, and there is no evidence before us to authorize any other finding. While we have construed this finding under the ordinary rules in reference to verdicts, there is authority that the findings of an inferior judicatory of the class to which this board belongs are to be construed even more liberally than verdicts are construed. People *v.* Comm'rs, 93 N. Y. 103.

6. There was evidence to authorize the finding, the judge of the superior court has approved the same, and we see no reason why his discretion should be controlled. It appears, that at a subsequent meeting of the board a motion was made to reconsider the action in finding Tibbs guilty and dismissing him from the force, and that a majority of the board voted against this motion. Error is assigned, in the petition for certiorari, upon the refusal of the board to reconsider its action. Even if the board had authority to reconsider its action in the matter so far as setting aside the judgment, there is nothing which appears in the record which renders erroneous the refusal in the present case. The board has very broad powers, and probably has the right to reinstate a policeman upon the force, notwithstanding his conviction and dismissal after a trial, but it is to be doubted whether a right to set aside a judgment of dismissal rests in the board. As it is an inferior judicatory, such an action would be in effect the granting of a new trial. It might, without regard to the former judgment, re-elect the policeman or reinstate him, but the judgment of dismissal, with all its legal consequences, whatever they might be, would remain unchanged, until that judgment was set aside in the manner prescribed by law. We see no reason for reversing the judgment.

*Judgment affirmed. All the Justices concur.*