In the Matter of the Application of JOHN NEWMAN and Others, Petitioners, for the Removal of DANIEL F. STROBEL, as Supervisor of the Town of Ohio, County of Herkimer, and State of New York, Respondent.

Fourth Department, September 28, 1932.

*Frederick B. Adams*, for the petitioners.

*Chester J. Winslow*, for the respondent.

EDGCOMB, J. This proceeding is brought, pursuant to the provisions of section 36 of the Public Officers Law, to remove Daniel F. Strobel from the office of supervisor of the town of Ohio in the county of Herkimer, for misconduct, maladministration, malfeasance or malversation in office.

Mr. Strobel objects to the sufficiency of the petition, and moves to dismiss the proceeding upon the ground that the petition fails to state facts sufficient to warrant the relief sought. That motion is now before us for decision.

Mr. Strobel is now serving his third successive term as supervisor of the town of Ohio. He was first elected in the fall of 1925, and took office in March of the following year, and served a full two-year term. He was re-elected in 1927, and served his second term. At the election in November, 1931, he again was chosen to succeed himself, and is now on his third term. He has been continuously in office since March, 1926.

The charges against Mr. Strobel relate to acts committed by him during the years 1930 and 1931, prior to the commencement of his present term of office. We are confronted with the very interesting question whether a public official can be removed during one term of office for misconduct in a previous term. Mr. Strobel asserts that he can only be ousted from office for a wrongful act committed during the term which he is now serving, and that, if he was guilty of any dereliction or wrongdoing in his second term, his sins have been washed away by the action of the people of his town in re-electing him as supervisor at the 1931 election.

No right to remove a town officer exists outside of the statute. The act reads as follows: " Any town or village officer, except a justice of the peace, may be removed from office by the Supreme Court for any misconduct, maladministration, malfeasance or malversation in office. An application for such removal   *   *   * shall be made to the Appellate Division of the Supreme Court held within the judicial department embracing such town or village."

Clearly, under the statute, the wrongdoing must relate to the official duties of the accused, and must have been committed while he was in office. But it will be noted that this section does not provide that the misconduct, maladministration, malfeasance or malversation shall have occurred during the particular term which the offender was serving when the proceedings were instituted. It simply refers to wrongdoing " in office." Doubtless the reference is to the same office which the accused was filling when the attempt was made to remove him, and not to some other, but there is nothing to indicate that the Legislature intended to treat each term of office to which an official might be re-elected to succeed himself as entirely distinct, separate and apart from all other terms of the same office, and to confine the remedy provided for to the identical term which the accused was serving at the moment the ouster proceedings were instituted. In fact, it would seem that, if the Legislature had intended any such limitation, it would have so indicated by some appropriate word or expression.

It is elementary that a statute should be construed so as to effectuate the intent of the Legislature; the language of the act must be read in harmony with the purpose and aim of the law-making body. (*Farmers' Bank* v. *Hale,* 59 N. Y. 53, 57; *People ex rel. McNeile* v. *Glynn,* 128 App. Div. 257.)

There is no provision in this State for the recall of a public official, if perchance the fickle public changes its mind as to his availability during his term of office. But the Legislature has recognized that, · while the great majority of men elected to office are honest, capable and efficient, and give to the discharge of their duties the best

that is in them, there are exceptions to the rule, and that sometimes an official betrays his trust, and proves himself unworthy of the confidence bestowed upon him by the electorate. It was to meet such a situation, and to enable a town or village to rid itself of an unfaithful and dishonest public official, that this statute was passed. Its object was not to punish the offender, but to improve the public service. (*State* v. *Leach*, 60 Me. 58, 70; *Rankin* v. *Jauman*, 4 Ida. 53; *State* v. *Scarth*, 151 Okla. 178, 182.)

The whole purpose of the Legislature in enacting this statute could easily be lost sight of, and the intent of the law-making body be thwarted, if an unworthy official could not be removed during one term for misconduct in a previous one. A public officer is none the less unfit to hold office, and the interests of the public are none the less injuriously affected because the misdeeds which portray his unfitness occurred on the last day of one term rather than on the first of the next succeeding term.

But it is argued that in a democratic government like ours the will of the majority is supreme, and that, where a person is elected to office, the people of his locality have put their stamp of approval upon him, and that their choice should not be disturbed by any court, unless the official has been guilty of misconduct after he commences to serve the identical term for which he was last elected. In other words, it is said that an election cleanses the successful candidate of all past sins, and washes away all taint of official corruption. This position could be urged with more force if the offense of the official had been exposed to the public before election, and had been made an issue during the campaign, and, notwithstanding his wrongdoing, he had been successful at the polls. A community usually gets the kind of government which it wants, and which it deserves. It has an opportunity to elect honest and capable officials, if it so desires. If it prefers incompetent, unworthy and dishonest men to fill the positions of government, or if it is indifferent, it has only itself to blame. Much might be said as to the right, or at least the advisability, of a court overriding the will of the majority of the electorate, when the people have elected a man to office with their eyes wide open, and with full knowledge of his shortcomings and derelictions. But that question is not here, and we need not pass upon it. It does not appear that the alleged misdeeds of respondent had come to light or were known to the people of his town when they elected him to his present term. The acts with which he is charged were apparently exposed for the first time in a report of the State Department of Audit and Control, made after an examination and audit of the fiscal affairs and accounts of the town of Ohio had been made

by an examiner of that department. This examination was not made until 1932, and was not filed in the town clerk's office until July second of that year. The voters of the town of Ohio have never had an opportunity to say whether they desire Mr. Strobel to continue to act as their supervisor in the light of the disclosures contained in this report of the Department of Audit and Control. Under these circumstances, I fail to see how it can be claimed that Mr. Strobel's election in 1931 closes the door to an inquiry concerning his acts during his previous term, or makes him immune from the provisions of this statute. It was said by Judge Rugg, Chief Justice of the Massachusetts Supreme Judicial Court, in a similar case: "The single circumstance of a re-election is not enough to prevent inquiry into acts alleged during the first term." (*Attorney General* v. *Tufts*, 239 Mass. 458, 482.)

Mr. Strobel's tenure of office having continued for the past five or six years without cessation or interruption, the entire period can and should be considered as one continuous term (*Attorney General* v. *Tufts*, 239 Mass. 458, 482; *State* v. *Welsh*, 109 Iowa, 19, 23), and he can be called to account for his misdeeds committed at any time during this period, even though the act actually occurred prior to the commencement of the separate and distinct term which he is now serving.

While undoubtedly each term of office which an official serves must be considered as separate, distinct and entire for certain purposes, there is no good or controlling reason why that should be so as to the incumbent himself.

The authorities in the various States upon this question are not in harmony. The confusion is due either to a difference in the statutes or constitutional provisions of the different States, or to a divergence of views respecting the question whether a re-elected official comes anew into his office with a clean bill of health, and approved and certified by the people as worthy and capable of holding his office and discharging the duties connected therewith, no matter what may have been his previous record. One can find ample authority upon either side of this proposition. I think that the weight of authority favors the rule that misconduct in a prior term of office, where the tenure has been continuous, furnishes adequate ground for the removal of the official. That seems to be the view of Chief Judge Cullen, as expressed by him in the Sulzer impeachment proceedings. He there said, speaking of the impeachment of Judge Barnard: "The contention of the respondent (Judge Barnard) in that case, that he was not liable to impeachment during one term for acts done in the previous one, was overruled, and, probably, the weight of precedent throughout the

country is in accord with that. decision." (Proceedings of the Court for the Trial of Impeachments, People of the State of New York, By the Assembly thereof, v. William Sulzer, vol. II, p. 1623.)

The following authorities sustain the rule above stated: *People ex rel. Burby* v. *Common Council* (85 Hun, 601); *Attorney-General* v. *Tufts* (239 Mass. 458, 482); *State* v. *Welsh* (109 Iowa, 19, 21–23); *State ex rel. Douglas* v. *Megaarden* (85 Minn. 41, 42, 43); *Hawkins* v. *Grand Rapids Common Council* (192 Mich. 276, 286); *State ex rel. Timothy* v. *Howse* (134 Tenn. 67, 78–80); *State* v. *Hill* (37 Neb. 80, 86–89); *Territory* v. *Sanches* (14 N. M. 493, 496, 498); *State ex rel. Perez* v. *Whitaker* (116 La. 947); *State ex rel. Billon* v. *Bourgeois* (45 La. Ann. 1350); *Tibbs* v. *City of Atlanta* (125 Ga. 18, 22, 23); *Brackenridge* v. *State* (27 Tex. Ct. App. 513, 530, 531).

The same question has been raised in numerous impeachment proceedings where public officials have been removed from office for offenses committed in a term prior to the one which the deposed official was serving when impeached.

In 1872 George G. Barnard was impeached and removed from the office of justice of the Supreme Court of the State of New York. His first term expired December 31, 1868. He had been re-elected in the fall of that year, and his new term commenced January 1, 1869. While serving this second term the impeachment proceedings were instituted. He was charged with misconduct during his first term of office, and he demurred to the articles of impeachment on the ground that any alleged misconduct occurring during his first term could not be made the basis of a charge against him. His demurrer was overruled, and he was found guilty of the offenses charged, and removed from office. (Proceedings of the Court of Impeachment in the Matter of the Impeachment of George G. Barnard, a Justice of the Supreme Court of the State of New York, vol. I, p. 191; vol. III, pp. 2178–2181, 2183.)

Horace G. Prindle was removed as county judge and surrogate of Chenango county in 1872 for official misconduct which occurred during prior terms of office. His demurrer to such charges was overruled by the Senate. (Proceedings in the Senate on the Investigation of the Charges Preferred against Horace G. Prindle, County Judge and Surrogate of Chenango County, vol. I, pp. 56, 57, 61, 63.)

In 1872 John H. McCunn, a justice of the Superior Court of the City of New York, was impeached and removed from office while serving a second term, for mal and corrupt practice in his office during his first term. (Proceedings in the Senate on the Investigation of the Charges Preferred against John H. McCunn, a Justice of the Superior Court of the City of New York.)

David Butler, Governor of Nebraska, was impeached in 1871 for offenses which did not occur during the term which he was then serving.

In 1853 on the trial of the impeachment of Judge Levi Hubbel, judge of the Second Judicial Circuit of Wisconsin, the Wisconsin Court for the Trial of Impeachments held that it had jurisdiction to inquire into offenses committed by the accused during his former term of office.

Governor Sulzer was impeached for misconduct which occurred while he was a private citizen, and before his term of office commenced. It was strenuously urged all through the trial that he could not be removed for any act, no matter how reprehensible it might be, which took place before his term of office commenced; that such wrongdoing did not constitute misconduct in office. This contention was rejected by a large majority of the court. He was found guilty of the article charging him with this particular misconduct by a vote of thirty-nine to eighteen.

Nine members of the Court of Appeals sat in the Court for the Trial of Impeachments which tried Governor Sulzer. It is interesting to study their vote on the question of the sufficiency of the articles of impeachment charging offenses which occurred before Governor Sulzer took office. Each judge gave his views upon the subject; some at great length. Their opinions, which will be found in the record of the trial in volume II, pages 1593–1686, are interesting and illuminating. Five of the nine, Judges HISCOCK, MILLER, COLLIN, HOGAN and CUDDEBACK, voted guilty, and four, Chief Judge CULLEN, and Judges BARTLETT, CHASE and WERNER, voted not guilty. The four judges voting in favor of the accused based their vote upon the ground that Governor Sulzer could not be removed for acts, no matter how reprehensible they might be, which were done when he was not in office at all, and while he was a private citizen. That is an entirely different situation from that which exists here, where respondent was in office at the time of the misconduct complained of, as well as when the removal proceedings were instituted.

*Matter of Guden* (71 App. Div. 422; affd., 171 N. Y. 529) turned upon the power of the Governor to remove the sheriff of Kings county because he had made a corrupt agreement with a third party to appoint such party his official counsel in consideration of said party's political support. There, as in the *Sulzer* case, the wrongful act was committed before the deposed official took office. It was held that the Governor was not without power to remove the wrongdoer. It is true that the agreement could not be performed until after Guden's term began, but the wrongful act itself

was actually committed when the offender was a private citizen and before his term of office, from which he was removed, began.

Our attention is called to *Conant* v. *Grogan* (6 N. Y. St. Repr. 322; 43 Hun, 637) and *Matter of King* (25 N. Y. St. Repr. 792; 53 Hun, 631), both of which decisions are of the late General Term, and neither of which is reported in full in the official series. While there are expressions in each opinion which at first blush might seem to uphold respondent's theory, an examination of the cases discloses the fact that the charge against each official related to acts performed during his then term of office, and evidence of some prior irregularity was offered which in no way pertained to the charge in issue. It was properly held that such evidence was incompetent. The respondent was not called upon to answer such charge, but an entirely separate and different one.

*Carlisle* v. *Burke* (82 Misc. 282) is a County Court decision, in which it appears that the defendant had been re-elected to the office of town superintendent of highways after his acts and accounts had been under investigation by the State auditors, and after his alleged shortcomings had been thoroughly aired in the public press, and had been made an issue in the election. With full knowledge of the situation, the people of his town returned him to office by a majority vote of the electorate — a far different situation from that which exists here.

While it is true, as before noted, that numerous authorities can be found holding that a public officer cannot be removed for misconduct during a previous term, we do not feel constrained to follow them. In some cases what is said is simply *obiter dictum.* (*Matter of Donnelly* v. *Roosevelt* [*In re Walker*], 144 Misc. 525, 531.) We think that the authorities to the contrary are much more in harmony with the spirit of the times and the object of the statute here under review. Any doctrine which makes a law the instrument of its own undoing does not commend itself, and should not be followed.

It is needless to say that we have not intended, by anything which we have said, to suggest that Mr. Strobel is guilty of the offenses charged. He denies any wrongdoing. On this motion we are compelled to treat the allegations of the petition as true. In no other way could we pass upon their sufficiency.

The respondent also seeks a dismissal of the charges filed against him because the petition is verified upon information and belief, and not upon the personal knowledge of the affiants, and is not accompanied by proof, by affidavit or otherwise, of the actual truth of the charges.

This proceeding is a statutory one. There is no provision that

the charges should be verified. In fact, no procedure is laid down, other than that the town officer should be given not less than eight days' notice of the application for his removal, and shall be served with a copy of the charges. All requirements of the statute have been complied with here.

It is very true that a public officer should not be subjected to the expense and stigma of defending an unfounded complaint of misconduct. Unfortunately, political, selfish and improper motives often induce criticism of public officials. Many times the very best official has the most enemies, and is subject to the greatest amount of criticism. But some public officers betray the trust imposed upon them, and prove unworthy of the confidence of their constituents. The innocent sometimes have to suffer for the sins of the guilty. We cannot shut our ears to a complaint when it comes to us in the way prescribed by the statute, and when there is enough before us to show some substance to the accusation. In addition to the petition, which sets forth the charges in great detail and particularity, we are referred to the verified report of the examiner of the Department of Audit and Control, which to a large extent corroborates the allegations of the petition. True, this report is not made a part of the petition, but it is referred to therein, and has been presented to and is before us without objection. There is enough evidence of official misconduct to warrant the court in calling upon the respondent to answer the charges.

Respondent's motion is addressed to the sufficiency of the entire petition. It is not sought to strike out any particular charge. We are not called upon, therefore, to pass upon the illegality of any particular specified act of respondent. That can well be decided after the evidence is in and the facts established. The petition as a whole is sufficient to put the parties to their proof, and respondent's motion to dismiss the proceeding should be denied.

All concur.

Motion of defendant to dismiss proceedings denied. Issues raised by petition and answer referred to Hon. John B. M. Stephens, official referee, to take the proofs and report the same to this court, together with his opinion thereon, with all convenient speed.