HARRY C. POST ET ALS. *vs.* THOMAS F. DILLANE ET ALS.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, JS.

Argued January 2d—decided April 3d, 1935.

*Nathaniel R. Bronson* and *J. Warren Upson,* for the appellants (plaintiffs).

*Vincent A. Scully,* with whom was *Charles O'Connor,* for the appellees (defendants).

MALTBIE, C. J. This is an appeal from the denial of a petition brought by certain electors of the city of Waterbury seeking the removal from office of the registrars and deputy registrars of voters of that city. Section 708 of the General Statutes provides that, upon the bringing of such a petition, requesting the removal of any registrar or deputy registrar "by reason of any violation of any . . . law relating to caucuses and primaries" the court shall proceed to hear the matter and "if such registrar or deputy registrar shall be found to have violated any of such provisions" the court shall declare his office vacant and the registrar or deputy registrar whose office is thus declared vacant "shall be ineligible to hold such office for a period of five years."

The provisions of the statutes as to primaries and caucuses which are relevant to the issues in this case briefly summarized are as follows: The registrars are required to be in session on two days in each year for the purpose of making an enrolment of the legal voters of the town or city and of making changes in the list last perfected, and they may hold sessions at such other times as they deem necessary. § 695. We take judicial notice that the elections in Waterbury are held between September and January and that under this statute the days for the fixed sessions of the registrars in that city would be the first and second Fridays in August. 21 Special Laws, p. 566. The registrars are required to compile separate lists of electors making application for enrolment according to the declared

political preference of the electors, and, unless application for erasure or transfer has been made, they are to continue on the list the names of all qualified electors appearing upon the list last perfected. § 697. Any elector not enrolled upon a caucus list may make application at any session of the registrars to the registrar of the political party with which he desires to affiliate, and in making this application he is required to state that he is not a member of or connected with any political party other than that in which enrolment is being sought. § 698. Upon written application, any elector may have his name erased from any list or transferred to another. § 699. Whenever the registrar of any political party or the deputy registrar thereof in cases where it is provided by law that he shall act in place of the registrar, shall be of the opinion that any person on the enrolment list of the political party which the registrar or deputy registrar represents is not affiliated with, or in good faith a member of, that political party, and does not intend to support its principles or candidates, such registrar or deputy registrar is required to cite such person to appear before himself and a representative of the political party involved and if it appears that it is not the bona fide intention of such person to affiliate with, or that such person is not affiliating with, such political party and does not intend to support its principles or candidates, his name may be erased from the enrolment list of that party. § 700. Enrolment in any other political party or organization is prima facie evidence that an elector is not affiliated with the party upon the enrolment list of which his name appears and that he does not intend to longer affiliate with it, and upon proof of this fact the name of such elector may be stricken from the list; but where a name is so stricken from the list the procedure as to notice to

appear and hearing provided in § 700 applies, and if it appears that the name of such elector has been wrongfully or improperly stricken from the list it must be forthwith restored. § 701. At any caucus or primary of any political party, if a written motion is made and fifteen voters vote in its favor, voting must be restricted to those appearing upon the enrolment list of the party. § 709. A penalty of fine or imprisonment is provided for a violation of the statutes by registrars or deputy registrars. § 711.

The finding of the trial court, to which no additions can be made, states the following facts: The names of fourteen electors of the city appeared upon the enrolment lists of both the Republican and Democratic parties for the year 1932; in 1933 the name of each was erased from the Republican list, without any application therefor and without notice to the elector or hearing; this was contrary to his or her wish; upon the attention of the Republican registrar being called to the matter he restored the names, without knowing or investigating to ascertain whether any application had been made for their erasure; and in one instance the name of the elector was restored by writing it on the printed list and the moderator of the meeting refused to recognize it and denied the elector the right to vote. The Democratic registrar had no knowledge of and had nothing to do with the erasure of these names from the Republican list. The Republican registrar and deputy registrar by long established custom exercised jurisdiction only over the Republican list and considered themselves without jurisdiction as regards the Democratic list; and the Democratic registrar and deputy registrar exercised jurisdiction only over the Democratic list and considered themselves without jurisdiction as regards the Republican list. The 1933 lists contained 2630 names which appeared on both

those of the Republican and the Democratic parties; both the Republican and Democratic registrars knew that there were a large number of names which appeared on both lists before the lists of 1933 were prepared and after they had been prepared; but neither took any steps up to the time of the hearing of the petition, April 27th, 1934, to have any of these names removed and did not cite in the electors to show cause why this should not be done. Both registrars were careless and negligent in the performance of their duties; the Democratic registrar violated the statutes without justifiable cause by failing to supervise the Republican list and the Republican registrar likewise violated the statutes without justifiable cause and his conduct amounted to misfeasance in office. These violations were not, however, intentional and were without malice. There were about 8000 names on the Republican list and the defendants knew or should have known that the duplication of names could render a primary of the Republican party of no significance. There was not, however, any contested Republican primary in 1933; while both registrars were candidates for re-election in 1933, the nominations and elections were uncontested; and no harm was done to the electors whose names were erased from the Republican list nor to anyone else by the misconduct of the registrars. The deputy registrars took no part in the removal of the names from the Republican list nor was it their duty to remove names or to do anything else in connection with the office of registrar unless instructed by their superiors. The acts complained of in the petition occurred prior to the present term of office of the registrars and did not involve moral delinquency. The trial court concluded that the defendants were not guilty of malfeasance or misfeasance in their present terms of office and that as

their conduct in their previous terms did not involve moral delinquency their offices should not be declared vacant.

The statutes set up a carefully prepared plan designed to assure that only persons definitely affiliated with a political party can participate in the primaries and caucuses of that party and to prevent persons who are adherents of other parties from taking part in or controlling the choice of candidates of a particular party. The success of that plan necessarily depends upon a proper performance of their duties by the registrars. No doubt this fact accounts for the somewhat drastic provisions for declaring the office of registrar vacant upon a petition alleging that he has been guilty of "any violation of any . . . law" relating to primaries or caucuses and upon a finding that he has "violated any such provision." The Legislature having in clear language thus defined the cause of removal, it is the duty of a court, if it finds such a cause to exist, to declare the office vacant. No doubt there might be minor unintentional infractions of the law which the court could overlook, upon the principle, "De minimis non curat lex." But for any substantial violation of law, whether it be intentional or merely due to negligence, the court has no choice under the statute except to act in accordance with its provisions. Indeed, the facts of this case show how thoroughly mere neglect of duty can defeat the purpose of the statute, because the 2630 electors whose names appear upon the lists of both parties might have voted in the primaries of either, whether or not it was the party of their preference, or indeed in both, and thereby the plan of the statutes to have the candidates of a party chosen by those definitely affiliated with it and by no others might well have been defeated. That both the registrars were guilty of sub-

stantial violations of the law cannot be denied. The removal of the fourteen names of the electors from the Republican list, without notice to them or hearing and hence without opportunity to them to have their names restored, was without warrant of law; and that those names were in fact later restored when the matter was called to the attention of the Republican registrar, and that, as it turned out, no harm was done save the denial to one elector of his right to vote, does not alter the fact that there was such a violation of law as the statute makes a ground of declaring the office vacant.

Both registrars were, however, guilty of a much more serious violation. Under the statute, whenever a registrar shall be of the opinion that any person on the list of the party which he represents is not affiliated with or in good faith a member of that political party and does not intend to support its principles or candidates, it is the duty of the registrar to cite such person to appear before him and a representative of the party concerned to show cause why his name should not be erased from such enrolment list and if, upon hearing duly had, it appears that the opinion of the registrar is well grounded, the name of the elector may be erased from the list; and enrolment in any other political party is prima facie evidence that the conditions justifying the erasure of his name are present. Both registrars knew that a large number of names appeared upon the lists of both parties before and after the preparation of the 1933 lists and the investigation of this situation would have naturally led to the discovery of the 2630 duplications of names. Yet they did nothing about the matter. This was to neglect a statutory duty in such a way as to strike at the essential purpose of the law. That both registrars were guilty of such a violation of the statutes

as to constitute a ground for the court to declare their offices vacant is clear.

The trial court did not hold to the contrary, but concluded that the misconduct occurred during the terms of office which had expired when the matter came on for hearing, and as the misconduct did not constitute moral delinquency it was not ground for declaring the offices vacant at that time. The appellants contend that the registrars violated the statute by not taking steps to cite in those electors whose names appeared on both lists subsequent to their entering upon their new term after re-election. The statute is silent as to when the registrars should act in such a matter; so far as appears there was likely to be no necessity of using the lists until fall; and we cannot say that under the circumstances the failure of the registrars to act in the matter between the time they took office under re-election and the date of the hearing in April was such an unreasonable delay as to constitute a violation of their statutory duty. It therefore remains to consider whether the fact that the registrars had been guilty of such misconduct as the statute contemplates during terms previous to those they were serving at the date of the hearing, prevented the court from declaring the offices vacant.

The statute merely provides that when the court has found that any registrar or deputy registrar has violated any provision of the law relating to caucuses or primaries, his office shall be declared vacant, and we must determine whether misconduct during a previous term of office is cause for such action within the legislative intent. In *Bolton* v. *Tully*, 114 Conn. 290, 296, 156 Atl. 805, we held that misconduct during a previous term of office might be ground for removing a public officer holding by appointment, where that misconduct was not known when he was re-appointed.

Whether knowledge by an officer making the appointment that his appointee during his previous term has been guilty of breaches of duty in matters affecting the public interest would prevent the removal of that officer, we have no need to inquire. See *Tibbs* v. *Atlanta,* 125 Ga. 18, 23, 53 S. E. 811. Knowledge of such breaches of duty cannot be an element in the situation where the question is as to the removal of an elected officer, because of the practical impossibility of proving knowledge or the lack of it by a majority of those voting for the election of that officer. Nor can we sanction the distinction made by the trial court and in certain decisions of other courts between breaches of duty in a previous term which involved moral delinquency and those which did not. The purpose of the removal of the public officer is not primarily his punishment but to assure obedience to the law and the protection of the public. *Attorney General* v. *Tufts,* 239 Mass. 458, 482, 131 N. E. 573, 17 A. L. R. 274; *State* v. *Welsh,* 109 Iowa, 19, 21, 79 N. W. 369; *State ex rel. Timothy* v. *Howse,* 134 Tenn. 67, 77, 183 S. W. 810. That this was the purpose of the particular provision we are considering definitely appears in the statutes because they provide for the prosecution and punishment in the criminal court of any registrar not obeying the law. This case well illustrates that neglect of duty may as effectually defeat the purpose of the statutory requirement as intentional wrongdoing and the public interest may just as much require the removal of an officer for one cause as for the other. The registrars are themselves nominated for and elected at the regular election in Waterbury; and this fact makes particularly apt what is said in *State ex rel. Timothy* v. *Howse,* supra (p. 80): "May it be said that the arm of the law is too short to reach and remedy this wrong; that a majority of the votes

so secured operates to render immune the culprit? If so, the law itself holds out a reward, under the guise of condonation, for him who subverts the law, and a temptation to perpetuate himself in office by a repetition of the acts of subversion. . . . We hold that the law is not to be thus made the instrument of its own undoing. Any doctrine that tends in that direction does not commend itself and should be rejected." See also *State* v. *Welsh,* supra; *Tibbs* v. *Atlanta,* supra; *McLaughlin* v. *Shore,* 152 Ky. 746, 748, 154 S. W. 45. So in this case had contest developed at the primaries of the Republican and Democratic parties in 1933, neglect of the registrars to remove from one or the other of the lists the names of those who were registered on both might well have enabled them to secure their own choice.

To construe the statute as meaning that the office of a registrar or deputy registrar could be declared vacant only for breaches of the law which occurred during the term in the course of which the proceedings for such action were held would mean that his previous misconduct would have to be disregarded, no matter how serious it was, how soon before his re-election it had occurred, whether it was known or had been concealed, whether indeed it had been the very means of securing his re-election. It is true that one can imagine a situation where the removal of an officer for a breach of law at a previous term might be unjust to him and serve little if any purpose in protecting the public service. On the other hand, to hold that re-election to office establishes a bar to proceedings under the statute based upon previous misconduct might fall far short of affording that protection to the public which the statute is designed to effect. We believe that it better accords with the legislative intent expressed in the broad provisions

of the statute to hold that where a registrar or deputy registrar has been guilty of such violations of the law as are made ground for declaring the office vacant, the fact that such violations occurred during a term previous to that in which the proceedings are brought does not justify the court in refusing to obey the mandate of the statute. Upon the facts found the trial court should have declared the office of both registrars vacant.

The only specific duties resting upon the deputy registrars arise "where it is provided by law that the deputy registrar shall act in the place and stead of the registrar." This provision refers to § 561 of the General Statutes, where it is provided that each registrar shall appoint a deputy registrar who "shall assist his principal when required, discharge his duties in his absence or inability to act, and, in case of the death, removal or resignation of such principal, shall become registrar." The trial court has found that the Democratic deputy registrar took no action with respect to the removal of the names from the Republican list and that the Republican deputy registrar took no action except to assist the Republican registrar. The statutes authorize a registrar to strike a name from the list where it appears in the list of more than one party, with the requirement that this be followed by notice to the person whose name is stricken off, hearing and, if the facts justify it, restoration of the name. The Republican registrar had authority to strike from the list the names of the fourteen electors whose names also appeared on the Democratic list and mere participation in this act would not constitute a violation of law by the deputy registrar. The finding does not justify a conclusion that the deputy Republican registrar did more than assist in this lawful act, and this would not be ground for declaring his office va-

cant. It does not appear that either of the registrars were at any time absent or unable to act or that any other contingency arose such that either deputy registrar was called upon to take the place of a registrar. Hence no direct responsibility rested upon them to see that the names appearing upon both lists should be stricken from one, and as the statutes in the situation before us placed that responsibility upon the registrars, the deputy registrars cannot be held guilty of a violation of them. The conclusion of the trial court that the deputy registrars had not been guilty of conduct requiring it to declare their offices vacant was correct.

There was error only in that portion of the judgment finding the issues for the defendants Dillane and O'Connor and this portion of the judgment is reversed and the trial court directed to enter judgment declaring their offices vacant; the rest of the judgment is affirmed.

In this opinion the other judges concurred, except JENNINGS, J., who dissented.