WILSON *v.* COUNCIL OF THE CITY OF HIGHLAND PARK.

1. Officers—Removal—Misconduct.
   The misconduct, misfeasance or malfeasance of an officer, to warrant removal from office, must have direct relation to and be connected with the performance of official duties and amount either to maladministration or to wilful and intentional neglect and failure to discharge the duties of the office at all.

2. Same—Removal—Crimes.
   Misconduct warranting removal of an officer from office does not include acts and conduct which, though amounting to a violation of the criminal laws of the State, have no connection with the discharge of official duties.

3. Same—Separation of Official and Personal Character.
   Misconduct warranting removal of an officer must be such as affects his performance of his duties as an officer and not such only as affects his character as a private individual, it being necessary, in such cases, to separate the character of the man from the character of the office and the misconduct charged be something which plaintiff did, or did not do, in his official capacity.

4. Municipal Corporations—Councilman—Removal from Office—Membership in Black Legion.
   Member of council of home rule city as to whom no official misconduct was shown or claimed *held*, not removable from office solely because of his membership in Black Legion, a secret society of political character.

5. Costs—Public Question—Removal of Councilman.
   No costs are allowed in proceeding to remove member of home rule city council because of his membership in Black Legion, a secret society of political character, a public question being involved.

Butzel, Bushnell, and McAllister, JJ., dissenting.

Appeal from Wayne; Marschner (Adolph F. ), J. Submitted January 7, 1938. (Docket No. 78, Calendar No. 39,725.) Decided April 4, 1938. Rehearing denied June 14, 1938.

Proceedings before Council of the City of Highland Park for removal of R. Stanley Wilson. Plaintiff reviewed order of removal in circuit court by certiorari. Judgment affirmed. Plaintiff reviews by appeal in the nature of certiorari. Reversed.

*Walter S. Rae,* for plaintiff.

*Matthew H. Bishop (Earl Young,* City Attorney, of counsel), for defendant.

POTTER, J. Plaintiff, a member of the council of the city of Highland Park, was removed from office because he was a member of the so-called Black Legion, a secret society of political character, the council finding he was a member and that his participation in the affairs of the Black Legion was highly reprehensible in a member of the common council of the city of Highland Park and rendered him incompetent to perform the duties of his office and constituted corrupt and wilful malfeasance in office and wilful misconduct to the injury of the public service. Plaintiff was removed by a vote of three to one. Thereupon, he reviewed the removal proceedings in the circuit court by certiorari where the action of the council was affirmed, and plaintiff appeals.

No fault is found with any official action of the plaintiff. It appears, so far as this record shows, his official conduct was exemplary.

Conceding the provisions of the charter of the city of Highland Park for the removal of officers are warranted by the home rule enabling act (1 Comp. Laws

1929, § 2228 *et seq.* [Stat. Ann. § 5.2071 *et seq.*]), the question is whether, conceding what was charged against plaintiff was true, it warranted the action of the council complained of. It is well settled the misconduct, misfeasance or malfeasance under our law, to warrant plaintiff's removal from office, must have direct relation to and be connected with the performance of official duties and amount either to maladministration or to wilful and intentional neglect and failure to discharge the duties of the office at all. It does not include acts and conduct which, though amounting to a violation of the criminal laws of the State, have no connection with the discharge of official duties. The misconduct which will warrant the removal of an officer must be such as affects his performance of his duties as an officer and not such only as affects his character as a private individual. In such cases, it is necessary to separate the character of the man from the character of the office. The misconduct charged and established must be something which plaintiff did, or did not do, in his official capacity. *State, ex rel. Martin,* v. *Burnquist,* 141 Minn. 308 (170 N. W. 201, 609); Mechem, Public Offices & Officers, §§ 457, 458; *Holliday* v. *Fields,* 210 Ky. 179 (275 S. W. 642); Throop, Public Officers, § 367; *Commonwealth* v. *Chambers,* 1 J. J. Marsh (24 Ky.), 108; *Speed* v. *Detroit Common Council,* 98 Mich. 360 (22 L. R. A. 842, 39 Am. St. Rep. 555).

No misconduct in office, no official misconduct, is shown or claimed. The defendant council was in error in removing plaintiff. As this disposes of the case, it is unnecessary to discuss other questions raised.

Judgment reversed and proceedings quashed, but without costs, a public question being involved.

WIEST, C. J., and SHARPE, CHANDLER, and NORTH, JJ., concurred with POTTER, J.

Butzel, J. (*dissenting*). The decision of the lower court should be affirmed. The case comes to us on certiorari. If the council had the power of removal and if there is any evidence that sustains the finding by the council of the city of Highland Park of incompetency and wilful misconduct to the injury of the public service, plaintiff was properly removed. No specific wrongful act of an official nature was complained of, but it was charged that Wilson's membership and activity in the Black Legion made him incompetent to perform the duties of the office of a member of the council of the city of Highland Park. For this reason it is necessary not only to discuss the power of removal but also the actions of Wilson during and since the year 1933.

The city of Highland Park is organized under the home rule act (1 Comp. Laws 1929, § 2228, *et seq.* [Stat. Ann. § 5.2071 *et seq.*]) and by its charter the council is authorized to remove an officer for cause. The home rule act does not specifically grant to a city organized thereunder the power to remove its officers, but such power is inherent in a municipal corporation. *Hawkins* v. *Grand Rapids Common Council,* 192 Mich. 276 (Ann. Cas. 1917E, 700). Furthermore, the power may be implied from the express provisions of the act. Under the home rule act, cities become largely self-governing and their powers are unrestricted unless they contravene the Constitution or general laws of the State. 1 Comp. Laws 1929, § 2240, subd. 3 (Stat. Ann. § 5.2083); *Marxer* v. *City of Saginaw,* 270 Mich. 256; *Gallup* v. *City of Saginaw,* 170 Mich. 195; *Village of Kingsford* v. *Cudlip,* 258 Mich. 144; *Hawkins* v. *Grand Rapids Common Council, supra.* While the home rule act is rather comprehensive in its provisions as to what a city may or may not incorporate in its charter, it leaves many things to be implied from the power

conferred. *Bowler* v. *Nagel,* 228 Mich. 434 (37 A. L. R. 1154); *City Commission of Jackson* v. *Hirschman,* 253 Mich. 596. Section 2241, 1 Comp. Laws 1929 (Stat. Ann. § 5.2084), provides that cities shall not have power to shorten the term of a public officer nor to extend it beyond the period for which he was elected or appointed unless he resign *"or be removed for cause."* This section impliedly recognizes the inherent power to remove an officer for cause.

Plaintiff was elected a member of the common council of the city of Highland Park in 1932, re-elected in 1934, and re-elected in April, 1936, for a term of two years. He was removed during the last term. There was no evidence of his participation in Black Legion activities later than the early part of the year 1934, and plaintiff contends that he may not be removed for misconduct in a prior term.

In *Hawkins* v. *Grand Rapids Common Council, supra,* we said:

"We are not prepared to find in this case, nor to hold as a general rule, that the misconduct of an officer, who is his own successor, committed during the preceding term, may not be inquired into and furnish ground for his removal."

*Speed* v. *Detroit Common Council,* 98 Mich. 360 (22 L. R. A. 842, 39 Am. St. Rep. 555), can be distinguished on the facts. If the acts of an officer are such as to indicate that he is incompetent to perform the duties of his office, it should make little difference as to what time those acts are committed. In *Post* v. *Dillane,* 119 Conn. 655 (178 Atl. 595), the court said:

"To construe the statute as meaning that the office of a registrar or deputy registrar could be declared

vacant only for breaches of the law which occurred during the term in the course of which the proceedings for such action were held would mean that his previous misconduct would have to be disregarded, no matter how serious it was, how soon before his re-election it had occurred, whether it was known or had been concealed, whether indeed it had been the very means of securing his re-election. It is true that one can imagine a situation where the removal of an officer for a breach of law at a previous term might be unjust to him and serve little if any purpose in protecting the public service. On the other hand, to hold that re-election to office establishes a bar to proceedings under the statute based upon previous misconduct might fall far short of affording that protection to the public which the statute is designed to effect. We believe that it better accords with the legislative intent expressed in the broad provisions of the statute to hold that where a registrar or deputy registrar has been guilty of such violations of the law as are made ground for declaring the office vacant, the fact that such violations occurred during a term previous to that in which the proceedings are brought does not justify the court in refusing to obey the mandate of the statute. Upon the facts found, the trial court should have declared the office of both registrars vacant.''

The right to remove for misconduct in a previous term is amply supported by authorities.. *Hawkins* v. *Grand Rapids Common Council, supra; Attorney General* v. *Tufts,* 239 Mass. 458 (131 N. E. 573, 132 N. E. 322, 17 A. L. R. 274); *Tibbs* v. *City of Atlanta,* 125 Ga. 18 (53 S. E. 811); *State, ex rel. Billon,* v. *Bourgeois,* 45 La. Ann. 1350 (14 South. 28); *State, ex rel. Timothy,* v. *Howse,* 134 Tenn. 67 (183 S. W. 510, L. R. A. 1916D, 1090, Ann. Cas. 1917C, 1125); *State of Iowa* v. *Welsh,* 109 Iowa, 19 (79 N. W. 369); *Territory of New Mexico* v. *Sanches,* 14 N. M. 493

(94 Pac. 954, 20 Ann. Cas. 109) ; *Bolton* v. *Tully,* 114 Conn. 290 (158 Atl. 805) ; *Post* v. *Dillane, supra; Matter of Newman* v. *Strobel,* 236 App. Div. 371 (259 N. Y. Supp. 402). It is contended that offenses which occurred in a prior term are condoned by the re-election of an official, but this is not true, at least where the offenses were unknown to the public. In holding that the offense of an officer was not condoned by his re-election when the commission of the offense was unknown at the time, it was said in *Matter of Newman* v. *Strobel, supra:*

"But it is argued that in a democratic government like ours the will of the majority is supreme, that where a person is elected to office, the people of his locality have put their stamp of approval upon him, and that their choice should not be disturbed by any court unless the official has been guilty of misconduct after he commences to serve the identical term for which he was last elected. In other words, it is said that an election cleanses the successful candidate of all past sins and washes away all taint of official corruption. The position could be urged with more force if the offense of the official had been exposed to the public before election and had been made an issue during the campaign, and notwithstanding his wrongdoing, he had been successful at the polls. * * * It does not appear that the alleged misdeeds of respondent had come to light or were known to the people of his town when they elected him to his present term."

There is nothing in the record which would indicate that the electorate was aware at the time of Wilson's re-election of his connection with the Black Legion. Therefore, if proper grounds for removal did exist during the prior term, his re-election would not be a bar to such removal.

The question remains whether mere membership in the Black Legion constitutes cause for removal. The Black Legion, was a secret society founded on principles of racial, religious and political discrimination. Its members took an oath to further these purposes by any means ordered by the officers of the organization, including violence and terrorism. Members were forbidden to expose the organization under penalty of death. Membership was supposedly permanent, the only ex-members being, as was stated, "six feet under ground." It is understandable how candidates for membership, being unaware of the true nature of the organization, could be innocently lured into taking the initial oath of the Black Legion. It is also understandable how they might continue with the ceremony, particularly when they were overawed, as was shown, by the pressing of drawn revolvers against their persons while taking the oath. It is even comprehensible that such men might continue to go about their business without further having anything to do with the organization and without ever divulging their membership, the fear of the vengeance that would be inflicted upon them in the event that they breached their obligations keeping them silent. However, notwithstanding the oath of secrecy and the threat of retribution, the testimony shows that one man had the fortitude to withdraw from the initiation. Another immediately visited the public authorities and divulged the criminal purposes of the order. On the other hand, the evidence shows that plaintiff was not only a member, but also an active one. During an initiation ceremony, while in hooded mask and gown, he pressed a gun against a candidate while the latter was taking the oath. However, it was not shown nor is it. claimed that plaintiff was even remotely con-

nected with or even knew of the capital crimes that had been committed by the members of the Black Legion.

Membership in a secret society devoted to benevolent, social or religious purposes, or in a political party devoted to peaceful change in the economic system is a right, and in no sense a ground for removal from office, unless, as in this case, such membership must necessarily tend to prevent the public officer from properly performing the duties of his office. The Black Legion was founded on principles of violence and illegality. It had a rather undeveloped plan to overthrow the government by force, the members to rise in arms when the password "Lixto" would be given. The Constitution vouchsafes the rights of free speech, press and assembly, even though the opinions expressed may be contrary to those of a vast majority of the people. However, such right is not an absolute one and does not permit acts that incite to violence and crime and have for their purpose the overthrow of government by unlawful means. *People* v. *Immonen,* 271 Mich. 384, which quotes from *Stromberg* v. *California,* 283 U. S. 359, 369 (51 Sup. Ct. 532, 73 A. L. R. 1484), wherein it is stated:

"There is no constitutional immunity for such conduct abhorent to our institutions."

Plaintiff was not charged with the commission of criminal acts, but he was removed because his membership in the Black Legion rendered him "incompetent to perform the duties of his office" and constituted "wilful misconduct to the injury of the public service." A public officer is an agent of the public, owing a fiduciary duty. Fair dealing and disinterested conduct on his part are required. *People* v. *Hirschfield,* 271 Mich. 20. He should be free to act

in the best interests of the public at large. To assure such freedom of action, he must be finally answerable to the electorate and not to a secret society with criminal aims. Yet, by his oath in the Black Legion, plaintiff was obliged to obey his superior officers in all matters, under pain of death. He was required to vote in elections for candidates selected by them. He was required to perform the duties of his office in the manner directed by them. On one occasion, Wilson was brought before the officers of the Black Legion and accused of not "playing politics" according to their desire. He was threatened with violence, then severely reprimanded and obliged to take the oath over again. The Black Legion was deeply involved in politics in Highland Park. The council found that other members of the city government were members of the Black Legion and one witness testified that a Highland Park police car was to assist him in his illegal activities.

One who sells his vote in a body of which he is a member is guilty of such misconduct in office as is a ground for his removal. *Etzler* v. *Brown,* 58 Fla. 221 (50 South. 416, 138 Am. St. Rep. 113). The plaintiff, by his membership in the Black Legion and by taking his oath, sold his vote just as much as if he had taken a bribe. He agreed to act, even in his public duties, not for the public good, but in accordance with the purposes of a terroristic secret society, and agreed to obey under all circumstances the orders of his superiors. An officer who renounces his obligations to the public and places himself under the control of an organization, such as the Black Legion, whether by bribery or influence, is guilty of such misconduct as merits his removal from office.

Notwithstanding plaintiff's denial that he ever belonged to the Black Legion, which is also known by

other names, there was evidence which sustained the judgment. Under the circumstances, he was properly removed from office.

Judgment should be affirmed, with costs to defendant.

BUSHNELL and McALLISTER, JJ., concurred with BUTZEL, J.